### BOLT vs. ROGERS and wife.

Where two or more persons engage in a fraudulent transaction to injure another, neither law or equity will relieve them, as against each other, from the consequences of such misconduct.

An agreement by an administrator to convey the real estate of the intestate, previous to obtaining the surrogate's order of sale, and in anticipation thereof, is illegal and void.

THIS was an appeal from a decree of the vice chancellor of the fourth circuit, allowing a demurrer to the bill, for want of sufficient equity therein to sustain the suit. The defendant H. Rogers was the executrix of Eber Weed, her late husband; and by his will she was entitled to the use of his whole farm until his youngest child arrived at the age of 21, and to the use of one third thereof for life. She also had a lien upon the farm of the complainant, her brother, under the will of their father. An agreement was entered into between the complainant and his sister to exchange farms, and she, as the executrix of her late husband, undertook to procure the sale of the Weed farm under a surrogate's order, so as to give Bolt a valid title to the same; and he was to allow her $1000 for the farm, in the exchange. A false and fraudulent account, against the estate of Weed, was accordingly made up by the executrix, and an order was obtained to sell the farm for the payment of debts. The farm was bid off by the complainant for $600, and was

1832.

Bolt
v.
Rogers.

conveyed to him under the surrogate's order ; and he convey-ed his own farm to her in exchange, allowing her the $1000 for the Weed farm. The heirs at law of Weed filed their bill in the late equity court of the fourth circuit, to set aside the sale made under the order of the surrogate ; in which both of the parties in this cause were made defendants. Bolt suffered that bill to be taken as confessed against him ; and the cause was heard on pleadings and proofs, as against Rogers and wife. The court decreed that the proceedings and orders of the sur-rogate, and the conveyance by the executrix to Bolt, so far as it affected the rights of the heirs of Weed, should be set aside, and held for nought ; but without affecting the conveyances between Mrs. Rogers and Bolt, so far as respected their own interests in the premises ; and reserving all rights as be-tween the defendants in that suit. The complainant in this suit alleged that he was imposed upon by the executrix, and that he supposed she had expended all the personal estate of Weed in payment of his debts, which she falsely represented to be the case. He therefore prayed that the exchange between him and the executrix might be rescinded, and that the defen-dants might be decreed to reconvey to him his farm, &c.

*W. L. F. Warren,* for the complainant. The surrogate's sale having been decreed fraudulent and void, the considera-tion for the complainant's farm failed, and he has a just claim upon the defendants for a reconveyance of the same. The cases referred to by the vice chancellor as the basis of his opin-ion, are all decisions at law. (3 *Cowen,* 339. *Norman* v. *Cole,* 3 *Esp. N. P. Rep.* 253. *Langdon* v. *Hughes,* 1 *Maule & Selw.* 594.) We contend the rule is different in equity. Not one of these cases is like the present. The agreement set forth in the bill was not illegal. It does not violate the rules of public policy. No case can be found where it has been held that an agreement with a trustee to bid off the trust property at its full value, was illegal. Such is the agreement here. In the cases in *Jones* v. *Caswell,* (3 *John. Cas.* 32,) and in *Doolin* v. *Ward,* (6 *John. R.* 194,) the agreement of the parties was to not bid, against each other. Here there was no such agreement ; but an agreement which had the tendency

to increase the amount of the sale. No person was to be injured or defrauded by it. But if the agreement should be void at law, it does not follow that it would be so in equity. Even at law, a party who, by means of imposition or fraud, ignorantly engages in an illegal contract, can recover back the money advanced by him upon it. (*Drummond* v. *Deey,* 1 *Esp. Rep.* 153.) In this case Lord Kenyon said, " that a *particeps criminis* could recover back money advanced in an illegal transaction, if he ignorantly engaged in it, by means of the imposition or craft of another." The rule of *in pari delicto* does not apply in a court of chancery. (*Smith* v. *Bromley, Dougl.* 697, *note* 3.) In this court no party can take advantage of his own wrong or turpitude. (*Eden. on Inj.* 16. *Osborne* v. *Williams,* 18 *Ves.* 379. *Lord St. John* v. *Lady St. John,* 11 *Id.* 535.) But in this case the contract is still executory ; if so, either party may rescind it. (*Lowrie* v. *Bourdieu, Dougl.* 470.) We are not concluded by the decree in the suit between the heirs at law of Weed and the parties to this bill. The matters in controversy between the parties to this bill were not in litigation in that suit. The complainant was not bound to see to the proper application of the purchase money of the farm sold under the surrogate's order.

*J. Ellsworth,* for the defendants. The contract set forth in the bill is illegal upon its face. The complainant and the defendant Hannah Rogers, for the purpose of making an exchange of farms, procured a surrogate's order to sell the land of the testator Weed. In this way they used the forms of law to effect such exchange, and thereby deprived the infant heirs and devisees of Weed of their patrimonial estate. The contract for the sale being against public policy, is absolutely void, both at law and in equity ; and the law will leave the parties where it finds them, and will aid neither. But the complainant was not innocent in this transaction. He cannot pretend that by this sale, money was raised to pay debts ; for the consideration agreed to be given for the farm sold was land, not money. A palpable fraud was committed by him and his sister upon the heirs of Weed. He was also one of the appraisers of the personal property of Weed, and as such estimated the property

very low, with the view of deceiving the surrogate, in order to procure a sale. The bill filed by the heirs alleged fraud against the complainant, which bill he permitted to be taken as confessed against him. Where a decree declares a deed fraudulent in fact, no release or reconveyance will be directed. The consideration of the complainant's farm conveyed by him to the defendant Hannah Rogers, has not entirely failed; for she had an interest in the farm sold, under the surrogate's order, which was conveyed by her to the complainant. The vice chancellor, in the suit commenced by the heirs of Weed, only set aside the proceedings so far as they affected them. If a contract is contaminated by an illegal act in part, the taint extends to the whole. (*Armstrong* v. *Toler,* 11 *Wheat.* 258.) The complainant cannot be permitted to allege his own fraud. This is not an executory contract; it is executed, as the parties have respectively gone into possession under it. All contracts to prevent competition at a public sale are illegal, both in equity and at law. The contract made between Bolt and his sister was void, because it was against the principles of public policy, and because it was fraudulent in fact. If parties will persist in going on in defiance of law, they must abide the consequences. If the agreement was valid, Bolt should have filed a cross bill in the other suit against the defendant Hannah Rogers and the heirs of Weed, and had his rights secured.

THE CHANCELLOR. If the allegations in this bill are true, the executrix not only committed a fraud upon her children, but also by false and fraudulent representations to her brother, induced him to aid her in the commission of the fraud. But I do not see how it is possible to give him any relief in this case without overturning an established principle of law. Wherever two or more persons are engaged in a fraudulent transaction to injure another, neither law or equity will interfere to relieve either of those persons, as against the other, from the consequences of their own misconduct. Although the complainant alleges that he was himself defrauded by the misrepresentations of the executrix, yet, from his own showing, he entered into an agreement with his sister which he was bound to know was illegal, and a fraud upon her in-

fant children. In *Herrick* v. *Grow & Brown*, (5 *Wendell*, 579,) the supreme court decided that an agreement by administrators to convey property, which they had not yet procured an order of the surrogate to sell, was illegal and void. In this case the complainant must have known that the property was not sold in good faith, for the payment of the debts of Weed, when the whole consideration on the sale was to be paid in another farm, conveyed to the administratrix in her own right. If the purchase was fair and legal on his part, he should have set up that defence in the equity court, to the suit brought by the heirs of Weed. Had he established such a defence there, the court would have decreed compensation to the heirs out of the lot which the executrix had fraudulently procured in exchange. If both the defendants in that suit were concerned in the fraud, the heirs had a right to elect to have their property restored to them by the fraudulent purchaser, or to have a decree against the fraudulent trustee for the amount received on the sale, or to have the property which she received in exchange for the farm. But the parties to the fraud cannot sustain a suit against each other, either at law or in equity, to set aside the contract as between themselves.

It has been a very common practice for executors, administrators, guardians and other trustees, to make an underhand bargain with a purchaser for their own benefit, and then to impose upon the surrogate, or upon this court, by obtaining a confirmation of their illegal proceedings as upon a fair sale of the property. It is therefore important to the community that it should be well understood that those who lend themselves to such fraudulent practices are not only exposed to have the conveyances to themselves set aside, but that they will have no remedy over against those whose willing instruments they have been in perpetrating the fraud.

The decree of the vice chancellor is affirmed, with costs.