CITED *in Donnelly* v. *State,* 3 *Dutch.* 471.

---

## DEN EX DEM. RUNYON ET AL. v. THE NEWARK INDIA RUBBER COMPANY.

1. It is irregular for the Orphans' Court, on an order for the sale of lands to pay debts, to order in gross that the whole of the real estate of the decedent be sold; but it is not such an irregularity as will avoid the sale when actually completed.

2. If an administrator directed to sell lands to pay debts, before the sale bind himself, by agreement, to sell it for a specified price, and sell it at auction upon a single bid at that price, this does not make void the sale, after it has been confirmed and executed, so that the heirs of the decedent can recover in an action of ejectment. The only remedy, if there is any in such case, is by bill in equity to set aside the sale upon equitable terms. The decisions in which it has been held, that a sale by executor, administrator or trustee, indirectly for his own benefit, is void at law, questioned. *Semble*, that relief can be had in such cases in equity alone, upon equitable terms.

3. It seems that an administrator's sale reported to and confirmed by the Orphans' Court, according to the requirements of the statute, cannot be set aside, or inquired into collaterally, except like all other judgments, for fraud in obtaining it.

This was an action of ejectment tried before the CHIEF JUSTICE, at the Essex Circuit. A verdict was rendered for the defendants, by the direction of the circuit judge, subject to the opinion of this court, upon a statement of the facts.

The lessors of the plaintiff claimed the premises, being one undivided half part of the factory and works of defendants at Newark, as heirs-at-law of Clarkson Runyon, deceased; they showed title in Clarkson Runyon at his death, by virtue of several conveyances to him and Hiram Hutchinson as tenants in common; and that they were the children and heirs-at-law of Clarkson Runyon, deceased.

The defendants claimed under Clarkson Runyon, by virtue of a sale by his administrators, Simeon Mundy, and Matilda C. Runyon, made under a decree of the Orphans' Court of the county of Essex, for the payment of his debts; this decree was made on the 9th day of September, 1846. The sale was made to Hiram Hutchinson, on the 10th of November, 1846, for $14,250. It was reported to the Orphans' Court, and was confirmed by them, December 23, 1846. The administrators, by deed dated February 8, 1847, conveyed the premises to Hiram Hutchinson, who conveyed them to the defendants on the same day; defendants offered in evidence the proceedings in the Orphans' Court, and deeds, with proof of advertising, &c.

It appeared that Clarkson Runyon and Hiram Hutchinson were partners in the india rubber business, and that the

property in question was part of the partnership assets, and that John Acken and John Ackerman were also interested as silent partners, to the amount of one-third. After the death of Runyon, a written agreement was made between Hiram Hutchinson and Runyon's administrators, by which the administrators were to receive $5,000 in full for Runyon's interest in the partnership effects, including the land, the other parties assuming and paying all the debts, and it was agreed that the administrators would give to Hutchinson title to the land, by selling under a decree of the Orphans' Court for that purpose. This agreement was made upon a statement made to the administrators by the surviving partners of the situation of the partnership affairs. The sale and conveyance to Hiram Hutchinson was made in pursuance and in fulfillment of this agreement. The sale was at auction, at the factory of the company. Although regularly advertised, no one was present except those employed about the factory, and the persons engaged in the sale; the property was struck off to Hutchinson upon the first and only bid.

This cause was argued before the CHIEF JUSTICE and Justices ELMER and POTTS, by Mr. *Dayton* and Mr. *Whitehead* for the plaintiff, and by Mr. *Frelinghuysen* and Mr. *Zabriskie* for the defendants.

Mr. *Whitehead* for the plaintiff:—

This sale is void, because made contrary to the direction and policy of the statute. The statute requires that lands directed to be sold by administrators, be sold *at auction*, to the highest bidder. This sale was at auction only in name; the bargain or real sale was made by the administrator before the order of the court was made; that was got only for the purpose of carrying out the bargain; there was but one bid and one bidder there, and that was according to the previous agreement.

The administrators had disqualified themselves from acting freely in the sale; they were bound, by a bargain made beforehand, to sell it to the purchaser for a certain price;

they were therefore interested in keeping the bidding below that price.

The agreement made by them is unlawful and void ; it has been so decided. 3 *Cow.* 300, *Bridgewater* v. *Brookfield ;* 5 *Wend.* 579, *Herrick* v. *Brown ;* 3 *Paige,* 154, *Bolt* v. *Rogers ;* 6 *Halst.* 355, *Den* v. *MacKnight ;* 2 *Halst.* 175, *Den* v. *Wright ;* 3 *Harr.* 74, *Den d. Obert* v. *Hammill ;* 2 *J. C. R.* 250, *Davoue* v. *Fanning.* Wherever an executor has an interest in a sale adverse to the parties for whom he is trustee, a sale by him is void. 3 *Ves. Jr.* 74 ; 4 *Barb. & Harr.* 240.

That this objection can be taken advantage of in a trial at law, where the title comes in question, is settled in *Den d. Obert* v. *Hammill,* 3 *Harr.* 81 ; 3 *P. W.* 282, *Annesly* v. *Ashurst ;* 4 *J. C. R.* 254, *Troup* v. *Wood ;* 1 *Story's Eq. Jur.* § 322 ; 2 *J. C. R.* 154 ; 6 *Ves. Jr.* 617 ; 3 *Brod. & B.* 116.

*Frelinghuysen* for defendants :—

The interest of Clarkson Runyon in this property, was only a partnership interest ; the title to the land was in the names of Runyon and Hutchinson, but it was bought with partnership funds, and for partnership purposes. Acken & Ackerman were interested in it. Runyon's share was only one-third ; and that, too, subject to partnership debts. The partnership were involved and prospects discouraging—their debts large and assets of doubtful and fluctuating value.

Decedent had offered, just before his death, to sell out for $5,000—was anxious to sell ; his administrators, a few months after, agreed to sell out for this sum. They had no personal interest in this sale ; they were the mother and grandfather of the infant heirs, and had no interest in common with the purchaser. Administrators or executors may compound and settle the affairs of the decedent, if they do it in good faith. 3 *P. Wms.* 381 ; 3 *Green,* 392 ; *Hill on Trustees,* 486, 278, 279 ; 9 *Sim.* 235, *Malthers* v. *Priestman.*

The real estate of partnership is to be considered and settled as personal. *Story on Part.* § 92 and 93.

But if this agreement is void, it does not vitiate the sale, if there is no actual fraud. A void agreement subjected the administrators to no liability, and could not therefore incapacitate them to sell.

If this sale is not lawful, it can be avoided only in a court of equity. *Den* v. *Hammill*, 3 *Harr.* 81 ; *Den* v. *O'Hanlon*, 1 *Zab.* 582.

Mr. *Zabriskie* on same side :—

In this case there is no pretence of a betrayal of trust by the administrators, or of any collusion between them and the purchaser. The only questions are—

1. Is an administrator's deed, founded on a sale made pursuant to a previous agreement, void or voidable, at law or in equity ?

2. Do the facts in this case show actual fraud on part of the purchasers ?

The position on the part of the plaintiff is, that the administrators were interested in keeping the biddings down, and therefore the sale void.

There is no authority to this effect ; the only principle is, that the trustee must have no interest in the purchase—no benefit from it. 1 *White's Leading Cases in Eq.* 135. To make it reach this case, this court must alter and extend this principle by judicial legislation.

The mere fact that a purchaser was known, and had agreed to give a certain price before the sale, or the order for sale, ought not to affect the validity of the sale. This is done in very many cases. In fact, in the country, unless a purchaser was known, and the price to which he would bid understood, it would be a great risk to set up a valuable estate at auction. In most cases, the trustees do not become bound that the purchaser shall have the property at the price, but only that if that price is bid they will sell. In this case the administrators incurred no liability, if the property brought more than the price named.

If this agreement is void and the authorities produced on the other side show that it is so most conclusively, then

certainly there was nothing to give the administrators any interest.

Again, in this case this sale cannot be impeached collaterally in this suit. This sale was confirmed by a decree of the Orphans' Court—a court having jurisdiction of the subject matter, and before whom the proceedings were had. By the act of November, 1837, (*El. Dig.* 494, § 3,) these sales for the first were required to be reported to and confirmed by the Orphans' Court. This was not law at the time the proceedings were had that were questioned in *Den* v. *Hammill* and *Den* v. *Saunders,* 1 *Gr.* 182.

This being the decree of a competent tribunal upon the regularity and validity of the sale, the only matter now in question, is final and conclusive, when brought up collaterally. *Den* v. *O'Hanlon,* 1 *Zab.* 505.

A judgment or decree may sometimes be impeached collaterally for fraud, but not for fraud in the matter adjudicated upon, which in this case is the sale, but only for fraud in the procurement or obtaining the judgment itself. A judgment on a promissory note may be set aside collaterally in equity for fraud in obtaining the judgment, as if an attorney were induced by false representations of the plaintiff to enter an appearance and sign a cognovit for the defendant; but a judgment regularly and fairly obtained upon a note, would not be set aside for any fraud in the note itself, or in its consideration, that is the matter adjudged. In this case had the order for sale or of confirmation been obtained by fraud upon the court or upon the parties, it might be inquired into in a court of equity collaterally; but whether the sale was lawful or fraudulent, which was the matter adjudicated, cannot be reviewed.

The question whether there was any actual fraud by the surviving partners in their representations to the administrators, of the condition of the firm, has nothing to do with the question in dispute here. There was not a *scintilla* of fraud, nor is there any evidence of it. But had there been fraud in the representations that induced the administrators to accept $5,000 for their interest in the partner-

ship assets, the only remedy is by a bill in equity to set aside that compromise, and calling for a true account.

Mr. *Dayton* for plaintiff:—

In this case, the agreement to sell was at private sale; that was the real bargain actually carried out. The order of the court and auction sale were only the mode adopted to effect it. They could not sell directly at private sale; can they do so indirectly?

We are not impeaching this decree here collaterally; this is the only mode in which this can be impeached at law. They set up the decree and deed as a defence to our action. We maintain and show that it is a void decree.

Again, this decree is void upon its face. It does not adjudge or ascertain that personal estate had but been applied to the payment of debts, which, by the statute, is the foundation of the jurisdiction of the Orphans' Court to order sale of lands. It is void for uncertainty; it does not describe what lands shall be sold; it directs all intestates' real estate to be sold.

ELMER, J. The title of the defendants is under a deed from the administrators of Clarkson Runyon, deceased, by virtue of an order of the Orphans' Court of the county of Essex, and a sale pursuant thereto, reported to and confirmed by that court. The order itself was objected to, by one of the plaintiff's counsel, as not regular, but I am satisfied that it is at least *prima facie* good, and therefore sufficient to sustain the sale. The account shows on its face, that there was not sufficient personal estate to pay the debts, and nothing appears to contradict this statement. It was irregular for the court to order all the estate to be sold in gross, but this does not make the whole proceeding void. The minor children were not formally represented, but the proper advertisement was made as directed by the statute, which is all the notice that is required.

It appears that the administrators, pending the proceedings in the Orphans' Court, entered into a written contract

with the defendants to make a good title to them for the property in dispute, being the principal part of the real estate of which the intestate died seized, for a specified sum, which sum was accordingly bid at the public sale by Hiram Hutchinson, and no other person bidding, the property was struck off and sold to him; he was reported to the court as the purchaser, the sale was confirmed, the deed made to him, and on the same day he conveyed it to the company. The real and important question in the cause is, whether such a sale and conveyance are absolutely void, or void in such a sense that the heirs of Clarkson Runyon, who are the lessors of the plaintiff, are entitled, for that reason, to recover the premises thus sold and conveyed in this action of ejectment.

How far the fact of such a preliminary bargain would of itself have been a good reason why the Orphans' Court should have refused to confirm the sale; or whether, if it appeared that a fair price had been obtained for the property, and no injustice done to the creditors or the heirs, that court would or ought to have confirmed it, are interesting questions. And whether a court of equity, if appealed to before or after the confirmation by the Orphans' Court, and the execution of the deed, and the payment of the money bid, would have interfered, and upon what terms, are also questions of much importance. That it is the duty of administrators, to sell by auction, and of course to sell in a fair and *bona fide* manner, for the best price that can be obtained, there can be no doubt. And that if they take it upon themselves to agree beforehand with a purchaser, for a specific price, they expose themselves to great suspicion, and render themselves personally liable to creditors or other persons interested, to answer for any actual loss or damage that may thus arise, is also beyond question. Should either party decline to carry into effect such an agreement, no court would enforce it. *Overseers of Bridgewater* v. *Overseers of Brookfield*, 3 *Cowen* 299; *Herrick* v. *Grow and Brown*, 5 *Wend.* 579; *Bolt* v. *Rogers*, 3 *Paige*, 154. But that such a

sale, fairly and regularly made, confirmed by the court which ordered it, and carried into effect by a deed valid on the face of the proceedings, may be avoided, however advantageous under all the circumstances it may have been, even in a court of equity, where the rights of all parties may be considered and protected, does not seem ever to have been decided in any adjudged case; and certainly it has not been decided that it is void at law.

The argument pressed upon the court was, that such a proceeding is clearly contrary to public policy, and that a sale so made is to be likened to the case of an administrator purchasing at his own sale, and is, therefore, under the decisions of this court, voidable by ejectment, at the suit of the heirs. The cases relied upon are *Den* v. *Wright*, 3 *Hal.* 175; *Den* v. *McKnight*, 6 *Hal.* 386; and *Den* v. *Hammel*, 3 *Harr.* 74. These cases decide that a sale and conveyance made by an administrator, or other trustee, directly or indirectly to himself, are in such a sense void; that the heirs may maintain ejectment for the land so sold and conveyed. But it cannot be denied that this decision is peculiar to this state, and has but little support from the cases relied on by the judges, all of which were either cases in equity or general propositions relative to the influence of fraud, which were of doubtful applicability to the point in question. In the case of *Den* v. *McKnight*, Chief Justice Ewing thought himself bound to follow the preceding cases, although he refused his sanction to the broad doctrine that had been announced, that such a deed was absolutely void; holding, according to the doctrines in equity, that it was only voidable by the heirs, and might become valid even as to them, by ratification or acquiescence. In the case of *Thorp* v. *Cullum*, 1 *Gillman* 615, it was denied that such a deed is void at law; and I think the whole doctrine of the equity courts in dealing with such cases, goes upon that presumption. According to the decisions of those courts, the purchaser himself cannot be relieved from his bargain; a stranger cannot avoid the sale; the heirs have the option of confirming the sale and holding the trustees to it, or of setting it aside as

of course, and of having the property resold; the purchaser is allowed what he paid, with interest, and the value of all permanent improvements; if the property has been resold to a *bona fide* purchaser, without notice, the original sale cannot be set aside, but the remedy will be personal against the administrator or other trustee. *White's Equity Cases*, 126, *Notes*. In the case *Mulford* v. *Bowen and others*, 4 *Hals. Ch. R.*, 751, ejectment having been brought by the heirs, the executor who admitted he had purchased the property through a friend, at his own sale, filed his bill to be reimbursed what he had paid and for improvements, and the chancellor having dissolved the injunction restraining proceedings in the ejectment, the court of appeals reversed his decree and reinstated it, thereby in effect deciding, as it would seem, that the real equities between the parties could only be settled in the Court of Chancery, and that the heirs could not be permitted to possess themselves of the property, until that was done.

Admitting, however, that we are bound to adhere to the decisions heretofore made in this court, until they are directly set aside by the Court of Errors, I am very clearly of opinion that we ought not to extend them beyond the precise points decided. This case differs in essential particulars from the case of a purchaser by a trustee at his own sale; and it differs from the decided cases, in the fact that the sale was regularly confirmed by a court whose decrees are entitled to be received as valid, until they are set aside by a higher court upon an appeal, or perhaps by a bill in equity. The judgment of the orphans' court confirming the sale, so long as it stands unimpeached, is a direct adjudication that the sale was legally made. *Voorhees* v. *Bank of U. S.*, 10 *Peters* 449; *McPherson* v. *Canliff*, 11 *Sergt. and R.* 422. It appears that the purchaser actually paid five thousand dollars in cash, which went into the hands of the administrators as assets, and that the property was held by copartners in trade for partnership purposes; so that if the sale ought to be avoided, it should be on such terms as would, under all the circumstances, be equitable and just. This cannot be

done effectually, by a court proceeding according to the course of the common law; so that whatever might be done, if no court of equity existed here, by way of mitigating the evil of so unfortunate an omission, to attempt it in this state, where we have the benefit of such a court, would only increase the difficulty, and be of no real service to either party.

Some evidence was given, which it was said, tended to prove that actual fraud was committed in obtaining the decree of the Orphans' Court, and making the sale, which ought to have been submitted to the jury. I see nothing, however, in the facts proved, which would have entitled a jury to avoid the sale on this ground. The sale was fairly and openly conducted, and no attempt made to prevent bidding by any person disposed to do so. There seems to have been some misunderstanding as to the price to be paid by the company; but the sum that was in fact bid and paid, was truly set forth in the agreement signed by the parties; and the terms of the contract appear to have been deliberately arranged by the administrators, after ample time to deliberate and obtain counsel, and with full knowledge of all the circumstances calculated to influence their decision. The property was involved in the concerns of a partnership; and taking into view the circumstance that the intestate had himself named the sum obtained prior to his decease as a fair price, and that the estate was freed from all the trouble of settling the accounts of a complicated partnership, and from all liabilities growing out of it, the bargain cannot be considered as in itself unreasonable or suspicious. I am, therefore, of opinion that the verdict for the defendants ought to stand.

The CHIEF JUSTICE and POTTS, Justice, concurred.

CITED in *Stryker* v. *Vanderbilt*, 1 *Dutch.* 501; *Stokes* v. *Middleton*, 4 *Dutch.* 37; *Hedden* v. *Shepherd*, 5 *Dutch.* 338; *Obert* v. *Obert*, 1 *Beas.* 427; *Huston* v. *Cassedy*, 2 *Beas.* 228.