Kitts *et al. v.*, Willson *et al.*

Filed Feb. 27, 1892.

---

## No. 14,991.

### KITTS ET AL. *v.* WILLSON ET AL.

VERDICT.—*Special Findings Unauthorized.*—Unauthorized findings inserted in a special verdict must be disregarded.

MORTGAGE.— *When Deed may be a Mortgage.—Purchaser with Notice.*—An absolute conveyance, without any accompanying written defeasance, contract of repurchase, or other written agreement, may be shown by means of extrinsic and parol evidence to be in reality a mortgage, as between the parties to it and as against all those deriving title from or under the original grantee who are not *bona fide* purchasers for value and without notice.

SAME.—*How Construed in Absence of Evidence.—Prima facie* such an instrument is an absolute deed; and a court will so recognize and treat it in the absence of affirmative evidence changing its apparent character.

FRAUDULENT CONVEYANCE.—*Aiding Grantor to Recover.— Heir.— Wife.*—As between the parties a court of equity will never interfere at the instance of a fraudulent grantor, who executes a conveyance to cheat his creditors, to aid him in the recovery of his property; and the heirs of a fraudulent grantor can no more question the validity of the conveyance than he can himself, but his wife can, although she join in the deed, if she had no knowledge of the intended fraud.

Kitts *et al. v.* Wilson *et al.*

COSTS.—*Quieting Title.*—*Disclaimer.*—In order to recover his costs, a defendant in a suit to quiet title must file his disclaimer when he first appears; and if he does not then but afterwards file his disclaimer the plaintiff will be entitled to a judgment for all costs accrued up to the date of its filing.

From the Decatur Circuit Court.

*E. P. Ferris, J. S. Ferris, W. A. Moore* and *W. W. Spencer,* for appellants.

*W. G. Holland, C. H. Wilson, F. E. Gavin* and *J. D. Miller,* for appellees.

McBRIDE, J.—This was a suit by the appellant Sarah Kitts for the partition of certain land in Ripley county, of which she claims to be owner of the undivided one-half, one-third of which she claims as the widow of one David H. Kitts, and one-sixth as heir of two of her deceased children. The complaint also seeks to have a warranty deed of the land, executed by her and her said husband, declared a mortgage and to have her title quieted.

There was a cross-complaint by the appellees William D. and Thomas E. Wilson, in which they claim to be the owners in fee simple of all of said land, and ask that their title be quieted.

The case has had a somewhat remarkable history. It has been six times tried, and is in this court for the fourth time. See *Cravens* v. *Kitts,* 64 Ind. 581; *Kitts* v. *Willson,* 89 Ind. 95; *Kitts* v. *Willson,* 106 Ind. 147. A special verdict returned by the jury last trying it is not the least remarkable of its features. It was apparently constructed by the jury according to their own ideas, regardless of form or precedent. It consists of thirty-two separately numbered propositions, each signed by the foreman, in which findings of fact, of evidence, and of mingled law and fact, are curiously mingled. Such as it is, however, all of the parties have elected to abide by it, and the only questions presented in this appeal grow out of the application of the law to the facts thus found. To copy the special verdict would unnec-

essarily encumber the record with a mass of verbiage. It is difficult to fairly abstract, but, in so far as the facts found are material to the controversy, they are substantially as follows:

January 13th, 1864, David H. Kitts, husband of the appellant Sarah Kitts was the owner in fee simple of the land in controversy, and on that day they joined in conveying it to one James H. Cravens, by what on its face purported to be a warranty deed. The consideration named in the deed is $1,200, less a school fund mortgage for $139. Kitts at the time owed Cravens $100, and was about entering the army. He was also a surety on the official bond of one Vandever, who was sheriff of Ripley county, and who, the jury find, had become a defaulter in a large sum for moneys collected by him as such sheriff, and not accounted for, and had absconded. The jury find that, at the time, Kitts applied to Cravens to know what he should do in the matter of his liability on Vandever's bond, and that Cravens suggested to him the conveyance of his land to some person in whom he had confidence; that Kitts suggested Cravens, and thereupon, with his wife, executed the deed. Of the deed to Cravens the jury make the following finding: " That said writing was executed and delivered to said Cravens for the fraudulent purpose of cheating, hindering and delaying the creditors of said Kitts in collection of their claims against him."

The jury make the following additional finding relative to the knowledge which the appellant had of the fraudulent character and purpose of the conveyance: "And that the plaintiff had no knowledge of the liabilities of David H. Kitts on the Vandever bond, only what was said by Cravens, that it was to get shut of paying a liability of $3,000 growing out of Vandever's defalcation and a Holten execution."

The jury make a further finding relative to the conveyance as follows: " In consideration of which there was a parol agreement made between said Kitts and Cravens; that

was, that Cravens was to pay off said mortgage, keep the taxes paid on the said Kitts land, and, further, when David H. Kitts came home out of the army, and paid to said Cravens said $100 that Kitts owed said Cravens, and paid back the school fund mortgage, together with the taxes, then Cravens was to deed back said land to said David H. Kitts."

At the time of the conveyance there were on the land a log house, a frame stable, and some other improvements, and Kitts, with his family, resided on it. Kitts enlisted in January, 1864, and returned from the army July 4th, 1865. During his absence the land was occupied by the appellant and her children. It was then worth $2,850.

After Kitts returned from the army he, with his family, continued to reside on the land until October 23d, 1868, during which time he farmed and improved the land to some extent. He also cut and sold 100 cords of wood from it, and cut and hauled saw-logs to a saw-mill sufficient to make 12,000 to 15,000 feet of lumber, a portion of which was for a house and barn on the land. He also sold other timber, for which he received the pay. The jury make findings of some length relative to the conveyance by Cravens to Kitts of some lands in Missouri and of Kitts' removal there with his family, and of his return in October, 1871.

We omit these because not material as the controversy is presented to us. After Kitts returned from Missouri in October, 1871, a tenant who was occupying the land under Cravens vacated the premises, and Kitts again entered into possession, and thereafter resided on the land until his death, which occurred October 14th, 1873. The jury find that, as between Cravens and Kitts, they regarded the conveyance of January 13th, 1864, as a mortgage.

November 6th, 1873, the appellant filed with the clerk of the Ripley Circuit Court her petition as widow of David H. Kitts, deceased, to have the property belonging to his estate set off to her, as not being worth over $500. This resulted

in the filing of an inventory and appraisement amounting to $482.90, all personal property. No real estate was inventoried or appraised. The appraisement was approved, and by order of court the title to the property was vested in the widow.

December 31st, 1873, Cravens and wife conveyed the land in controversy to the appellee William D. Wilson by warranty deed, for the expressed consideration of $2,500, and on the 13th day of January, 1874, William D. Wilson and wife conveyed to the appellee Thomas E. Wilson an undivided interest in the land by quitclaim deed.

The jury do not find the extent of the interest conveyed by the latter deed, but find that the consideration was $900.

The Wilsons are in possession, claiming title to the land through said conveyance from Cravens.

The twenty-seventh finding is as follows: " 27. We find that William D. Wilson and Thomas E. Wilson have no title whatever in or to the real estate described in the complaint, or any part of the same, or as described in the cross-complaint herein."

The jury then find that the appellant is the owner in fee of the undivided one-half in value of the property, and that the remaining heirs of Kitts are the owners in fee of the residue, specifying their respective shares.

They also make the following finding: " We find that the Wilsons purchased this land with full notice, as set forth in the complaint."

The foregoing abstract not only states every material fact found by the jury necessary to a determination of the controversy, but, in addition, some facts discussed and apparently relied on by counsel, but which we deem wholly immaterial and foreign.

On the 17th day of May, 1888, while the trial before the last was in progress, James B. Kitts, one of the appellants, filed a written disclaimer, and on the next day the court, on motion of Wilson and Wilson, rendered judgment in their

favor against him on the cross-complaint, quieting their title as against him, and for costs.

Before considering the other questions presented by the record, we will say, of the so-called special finding numbered 27, that it is not a finding of a fact proper to be incorporated into a special verdict.

It can be regarded as no more than the conclusion reached by the jury as to the legal effect of the facts previously found by them relative to the title of Wilson and Wilson. If it can be regarded as a finding of fact at all, it is no more than a general finding.

Whether the parties to the litigation had title to the property in controversy is a mingled question of law and of fact, and must be determined by the court applying the law to the facts found. The question of practice involved does not differ in principle from that involved in the case of *Pittsburgh, etc., R. R. Co.* v. *Spencer*, 98 Ind. 186. See, also, *Indianapolis, etc., R. W. Co.* v. *Bush*, 101 Ind. 582 ; *Pittsburgh, etc., R. W. Co.* v. *Adams*, 105 Ind. 151 ; *Sohn* v. *Cambern*, 106 Ind. 302.

The same may be said of the findings that the appellant is the owner in fee of the undivided one-half of the property in controversy, and that the remaining heirs of David H. Kitts are the owners in fee of the residue.

The findings are unauthorized, and must be disregarded.

The position of the appellant is, that the jury having found that the conveyance by Kitts and wife to Cravens was regarded by them as a mortgage, the title to the land remained in Kitts, subject to the mortgage, and at his death descended to the appellant as his widow, and to his children ; that Wilson and Wilson having taken title with notice of the facts which gave to the deed its character of a mortgage, they acquired no greater or better title than their grantor Cravens ; that the title of Kitts' heirs can only be divested through a foreclosure of the mortgage ; and that, there hav-

ing been no foreclosure, they are entitled to partition, as they would be if the mortgage had been in the usual form and not foreclosed.

The appellees, however, contend that, notwithstanding the deed was intended as between the parties to be merely a security for a debt, and hence, in equity, only a mortgage, the jury having found that the intention of the parties in giving to it the form of an absolute conveyance was to defraud the creditors of Kitts, equity will refuse to aid them by declaring it a mortgage, and will leave them where it finds them ; that the appellant and the children of the grantor all claim as his heirs, and succeed to his rights, and no more, and that, as he could not appeal to a court of equity to declare the deed a mortgage, they can not ; that, if this is not true as to the appellant, they say that the jury expressly find that she was a party to the fraud, and, hence, is in no better situation to appeal to a court of equity for relief than her husband was.    They further insist that as there is no finding that the debt secured has been paid, and no offer to pay or to " do equity," the appellant has no standing ; that her only right would be that of redemption, and that before she can be entitled to relief she must do equity herself, by paying, or offering to pay, the mortgage debt; also, that her action in applying for and securing the decree of the court setting off to her and vesting in her the title to the estate left by her husband, is an admission of record, which estops her to afterward claim title to this land as against those who bought it thereafter.

The appellees assigned cross-errors, alleging that the court erred in adjudging that the appellant was entitled to recover any portion of the land in controversy, and in refusing to render a decree quieting their title to the entire land.

James B. Kitts has also assigned as separate error the action of the court in rendering judgment against him on his disclaimer, while the remaining heirs of David H. Kitts, ap-

pellants, insist that the court erred in not adjudging them entitled to the undivided one-half of the land.

Even if we were to disregard the specific finding of the jury that, as between Cravens and Kitts, they regarded the conveyance of January 13th, 1864, as a mortgage, its character is clearly fixed by the other facts found. It is clearly a mortgage to which the parties have, for reasons of their own, seen fit to give the appearance and form of an absolute conveyance. No question is better settled in this State than that a conveyance of land, absolute on its face, without anything in its terms to indicate that it is otherwise than an absolute conveyance, and without any accompanying written defeasance, contract of repurchase, or other agreement, may, in equity, by means of extrinsic and parol evidence, be shown to be in reality a mortgage as between the original parties, and as against all those deriving title from or under the original grantee, who are not *bona fide* purchasers for value and without notice. Pomeroy Eq. Jur., section 1196; *Herron* v. *Herron,* 91 Ind. 278; *Parker* v. *Hubble,* 75 Ind. 580; *Landers* v. *Beck,* 92 Ind. 49; *Cox* v. *Ratcliffe,* 105 Ind. 374; *Voss* v. *Eller,* 109 Ind. 260.

Counsel for the appellants err, however, in assuming that the mere existence of the facts which change its apparent character of an absolute conveyance into that of a mortgage is alone sufficient to determine the rights of the parties, and that, because facts existed, and have been found by the jury, fixing upon the instrument that character, it is, therefore, to be considered as it would have been considered if it had been executed in the form of an ordinary mortgage. They also err in assuming that because in this State a mortgage gives a mere lien upon land, and conveys no title her rights are different and her position better than if a mortgage conveyed title.

In taking these positions counsel must, of course, act on the additional assumption that the court can and will necessarily take notice of the existence of the facts changing

an instrument which to all outward appearances is a warranty deed conveying title into a mere mortgage. Can the court consider and act upon such facts?

*Prima facie* the instrument is an absolute deed. Courts of equity, as well as courts of law, will so recognize and treat it in the absence of affirmative evidence changing its apparent character.

He who asserts that it is other than it appears to be, must establish that fact by evidence. Such evidence will only be heard by a court of equity, which, looking through the entire transaction, disregards the form of an instrument, and takes note of the actual purpose of the parties. In an action at law the parties would not be allowed to show that an apparent deed was only a mortgage. Before the adoption of the code, authorizing the same court in one action to administer both legal and equitable relief, a party could not defend in ejectment on the ground that an apparent absolute deed was only a mortgage, until he had first obtained a decree in equity declaring its true character. *Parker* v. *Hubble, supra.*

Now, while the courts will, in the same action, administer both legal and equitable relief, they are, as courts of equity, governed by the same rules and act upon the same principles as before.

If, when the question was presented to the circuit court, any fact was disclosed which showed that the party who invoked the aid of the court was without standing in a court of equity, that court had no power to extend its aid. And, as the case comes to us, notwithstanding the findings by the jury, we are compelled to first examine all of the facts found to know if it is a case where a court of equity can interpose.

Therefore, notwithstanding the existence of facts which would change the apparent character of the instrument and demonstrate that it is a mere mortgage, we must at the outset consider the standing of the appellants and inquire if

they come with clean hands. Has their conduct, or the conduct of those through whom they claim, been such that we can hear them, or consider the facts they present? If they are not entitled to be heard, those facts must be disregarded; and the instrument must, so far as they are concerned, retain the apparent character which the parties to it have given it, and be treated as an absolute deed conveying title.

The fact that the Wilsons when they bought had notice of the facts which changed the apparent deed to a mortgage, is only material if the appellants can avail themselves of these facts.

The jury found that the deed to Cravens was executed for the fraudulent purpose of cheating, hindering and delaying the creditors of Kitts.

A conveyance of property made to hinder or delay creditors is illegal as to creditors only.

As between the parties it is good, and a court of equity will never interfere at the instance of a fraudulent grantor to aid him in the recovery of his property. Pom. Eq. Jur., section 401; *Edwards* v. *Haverstick*, 53 Ind. 348; *Henry* v. *Stevens*, 108 Ind. 281; *Sweet* v. *Tinslar*, 52 Barb. 271; *Bolt* v. *Rogers*, 3 Paige, 154; Bump Fraud. Conv., sections 395, 397, 398.

This rule has been applied repeatedly, when, as in this case, a court of equity was asked to declare a deed absolute in its terms a mortgage. The rule is thus stated in Jones Mortgages, section 283: " The grounds on which courts of equity admit oral evidence, to show that a deed absolute in form is in fact a mortgage, are purely equitable, and relief is refused whenever the equitable consideration is wanting. Therefore, when a debtor has made an absolute conveyance of his land to one creditor for the purpose of defrauding his other creditors, he is in no condition to ask a court of equity to interfere actively in his behalf to help him get his land back again, and thus secure to him the fruits of his fraudulent devices. 'One who comes for relief into a

court whose proceedings are intended to reach the conscience of the parties must first have that standard applied to his own conduct in the transactions out of which his grievance arises. If that condemns himself, he can not insist upon applying it to the other party.' An oral agreement between the debtor and creditor who took the conveyances whereby the latter agreed to reconvey the land upon payment of the debt due him, is not deemed in such case an equitable ground for relief. The court will interfere only for the benefit of those whom the debtor intended to defraud." See, also, cases of *Parrott* v. *Baker,* 82 Ga. 364; *Ybarra* v. *Lorenzana,* 53 Cal. 197; *Hassam* v. *Barrett,* 115 Mass. 256.

That which would have denied to Kitts in his lifetime a hearing in a court of equity stands equally as a barrier in the way of those who claim as his heirs. They could acquire no greater rights by inheritance than he had. The heirs of a fraudulent grantor can no more question the validity of the conveyance than he can himself. *Wilson* v. *Campbell,* 119 Ind. 286 (290); *Laney* v. *Laney,* 2 Ind. 196; *Springer* v. *Drosch,* 32 Ind. 486; *Stewart* v. *Ackley,* 52 Barb. 283 (287); *Moseley* v. *Moseley,* 15 N. Y. 334; *Battle* v. *Street,* 85 Tenn. 282. This not only applies to such of the children and grandchildren of Kitts as are parties, but also to the portion claimed by the appellant by inheritance from her two deceased children. The appellees insist that the one-third which she takes as widow she takes subject to the same infirmity; that she takes it as heir, and thus is upon the same footing with the other heirs. This contention can not be sustained. The rights of a widow in the lands of her deceased husband are not merely those of an heir. An heir has no interest in the lands of his ancestor until the ancestor's death. The wife, however, has an inchoate interest in all the husband's lands from the instant he acquires them. It is this inchoate interest which at his death under our statute ripens into a fee, as it may do in certain contingen-

cies even during the life of the husband. That which will deny to the fraudulent grantor and to his heirs the right to equitable assistance in declaring an apparently absolute deed a mortgage will not necessarily affect the right of his widow. Although she may join with him in executing a conveyance of his land which is intended to defraud his creditors, if she has no knowledge of the intended fraud she is not affected by it. If, however, she not only has knowledge of the fraud but participates in it, she will have no better standing in a court of equity than the husband.

The finding above referred to, that the deed to Cravens was executed for the fraudulent purpose of cheating, hindering and delaying the creditors of Kitts, is general in its terms, and applies alike to David H. Kitts and to the appellant. Of her the jury makes the additional finding that while she did not know of her husband's liability on Vandever's bond, she did know from Cravens that the conveyance was made to avoid payment of a $3,000 liability growing out of Vandever's defalcation and a certain execution. She was therefore a participant in the fraud, and a court of equity will not aid in restoring to her an interest in property which she knowingly and actively aided her husband to fraudulently withhold from his creditors. *Barrow* v. *Barrow,* 108 Ind. 345; *Noble* v. *Noble,* 26 Ark. 317; *Biering* v. *Flett* (Tex.), 7 S. W. Rep. 229; *Blair* v. *Smith,* 114 Ind. 114.

She will be left where she has knowingly and voluntarily placed herself; and to her, as to the remaining parties who claim through her husband, the deed is in law and in fact what it purports to be.

It is unnecessary for us to consider what, if any, effect should be given to her act in having the property belonging to her husband's estate set over to her.

The appellant insists that under the findings the appellees are not entitled to relief on their cross-complaint, for the reason that the special verdict does not find the specific interest conveyed by William D. Wilson to Thomas E. Wil-

son.   This is a matter with which the appellant has no concern.

The facts found show that between them the two Wilsons own all of the land, and that neither the appellant nor any of the other parties has any interest in any of it.   There is no controversy between the Wilsons over the matter. Their cross-complaint, in which they join, avers that the interest owned by William D. is the undivided three-fourths, and that of Thomas E. is the undivided one-fourth.   This, as between them, must be taken as true, and is conclusive.

The only remaining question is, did the court err in rendering judgment against James B. Kitts for costs on his disclaimer?

We think this was clearly right.   If, when he first appeared to the action, he had filed his disclaimer, he would have been entitled to a judgment for costs under section 1072, R. S. 1881.   Instead of doing this, however, he contested the claim of the appellees, and only files a disclaimer after years of active litigation.

The appellees were entitled to a judgment against him for all costs made by him while actively contesting their right to the property.

The law is with the appellees upon the facts stated in the special verdict, both upon the assignment of errors made by the appellant and upon the cross-assignment of errors.

The judgment of this court upon the assignment of errors is against the appellant, and upon the cross-assignment is for the appellees Wilson and Wilson.

Affirmed upon the assignment of errors, and reversed upon the cross-assignment of errors.

MILLER, J. took no part in the consideration or decision of this cause.

Filed Dec. 8, 1891; petition for a rehearing overruled Feb. 26, 1892.