No. 16,949.

### KITTS *v.* WILLSON ET AL.

RES ADJUDICATA.—*Essentials to Conclude Party.—Suit in Same Right.*— Before the rule of former adjudication can be invoked, it must appear that the thing demanded in the present suit is the same as that demanded in the former suit; that the second demand is founded upon the same cause of action; that it is between the same parties (or their privies), and found for one of them against the other in the same quality. The party sought to be concluded must not only be the same person, but he must also be suing in the same right.

FRAUDULENT CONVEYANCE.—*Void only as to Creditors.*—A fraudulent

conveyance is void only as to creditors of the grantor, and as to them only to the extent in which it may be necessary to deal with the conveyed estate for the satisfaction of their claims. To every other purpose it is good.

ELECTION OF REMEDIES.—*Sale on Execution.*—*Fraudulent Conveyance.*— If a creditor elect to consider a sale of his debtor's land, on an execution he held against him, void, and brings suit to set aside a conveyance of such land as fraudulent, obtains a judgment and under it accepts payment in full of his claim, he will be bound by his election, and can not claim title under such sale on execution.

From the Jennings Circuit Court.

*E. P. Ferris* and *W. W. Spencer*, for appellant.

*C. H. Wilson* and *J. D. Miller*, for appellees.

HOWARD, J.—This was an action in ejectment and for damages. There have been numerous controversies in relation to the real estate in dispute, all originating in a conveyance of the land, made January 13, 1864, by David H. Kitts, since deceased, and the appellant, then his wife. The litigation has been almost continuous since 1868, this being the seventh appeal to this court. *Cravens* v. *Duncan*, 55 Ind. 347; *Duncan* v. *Cravens*, 55 Ind. 525; *Cravens* v. *Kitts*, 64 Ind. 581; *Kitts* v. *Willson*, 89 Ind. 95; *Kitts* v. *Willson*, 106 Ind. 147; *Kitts* v. *Willson*, 130 Ind. 492.

The facts in the present case, as found by the court, are briefly as follows: Appellant and appellees claim title from David H. Kitts.

1. On said 13th day of January, 1864, Kitts and his wife, the appellant, conveyed the land by warranty deed to James H. Cravens for the stated consideration of twelve hundred dollars, subject to a mortgage for one hundred and thirty-nine dollars, and on October 31, 1873, Cravens and wife, by like warranty, conveyed the land to the appellee, William D. Willson, in consideration of twenty-five hundred dollars, nine hundred being paid in cash. On January 13, 1874, William D. Will-

son and wife conveyed the undivided one-fourth of the land to his coappellee, Thomas E. Willson. All these deeds were duly recorded within fourteen days after their execution. The Willsons went immediately into possession of eighty acres of said land, and on February 2, 1875, Cravens placed them in possession of the rest of it, and they have ever since remained in the exclusive possession of the same.

2. David H. Kitts died October 14, 1873. At the time of his death he was living on the land with his wife, the appellant, and after his death she continued to reside thereon until February 2, 1875, when she was dispossessed by Cravens, as aforesaid, in an action before a justice of the peace, which was appealed to the Ripley Circuit Court and judgment dispossessing her rendered in that court.

3. On October 26, 1868, John Mullan recovered judgment in the common pleas court of Ripley county against David H. Kitts and one Walter Bagot for $339.50, not collectible without relief from valuation and appraisement laws. On April 9, 1869, an execution issued on said judgment and was levied on the lands here in dispute as the property of Kitts, and the land was sold by the sheriff and bid in by Mullan for two hundred dollars, without having been offered in parcels and without appraisement. The land was then of the value of twenty-four hundred dollars. Mullan paid the costs, $87.61, and receipted on the execution for $112.39, and then received from the sheriff a certificate of purchase. The execution was returned unsatisfied, and together with the return was duly entered of record in the execution docket November 3, 1869. Mullan afterwards assigned his sheriff's certificate and his unsatisfied judgment to his son-in-law, Harden Duncan.

On September 22, 1870, Duncan received a sheriff's

deed for the land, which deed was placed on record July 19, 1871. Duncan, on May 20, 1870, caused another execution to be issued on the judgment and levied on a part of said land, and also on lands of the other judgment defendant, Bagot.

The lands were appraised in this case. Duncan bid in the Kitts land for more than two-thirds of the appraisement, and bid $136.72 for the rents and profits of the Bagot land, being also more than two-thirds of the appraisement. He then paid the costs, and placed the receipt of Mullan on the writ for $258.72, by the purchase of the land, but proceeded no further with said purchases and got no possession thereunder.

4. On March 17, 1874, Duncan brought an action against James H. Cravens, William D. Willson and the administrator of the estate of John Mullan, then deceased, to set aside the deed made January 13, 1864, by David H. Kitts and appellant, his wife, as being fraudulent and void as against the Mullan judgment, assigned to Duncan as aforesaid. The jury found a verdict in that case for the plaintiff Duncan; and, in answer to interrogatories, they found specifically that Kitts made the conveyance to Cravens with an intention to hinder, delay or defraud his creditors; that Cravens had knowledge of Kitts' intention at the time he took the conveyance; that $1,600 of the purchase-money was still due from Willson to Cravens at the commencement of the action; and "that the amount of principal, interest and costs due the plaintiff Duncan upon the judgment rendered in favor of John Mullan against David H. Kitts and Walter Bagot is principal, $339.50; costs, $66; interest, $122.22," or, in all, $527.72. The court entered judgment accordingly; that the conveyance made by David H. Kitts to James H. Cravens, January 13, 1864, for said land, "is fraudulent and void as to the judgment set

forth in the complaint in said action"; and "that the plaintiff, Duncan, recover of the defendants, James H. Cravens and William D. Willson, the sum of $527.72, the amount of the debt found due the plaintiff, and also his costs in said action laid out and expended, and that sufficient of said lands should be sold upon an execution to be issued thereon, without relief from valuation and appraisement laws, to satisfy the debt and damages of the plaintiff recovered in said action." In the trial of said cause the execution first issued on the Mullan judgment, as mentioned in finding three, having been introduced in evidence, Duncan, to show the invalidity of the sheriff's sale on said execution, introduced and gave evidence to the jury to prove that the land levied on and sold had not been appraised.

On appeal to the Supreme Court, this judgment was affirmed on a remittitur being entered by Duncan for $137.87, as a credit on the judgment by reason of the sale of the rents and profits of the Bagot land. The remittitur was entered in this court, and the judgment thereupon affirmed. On August 21, 1877, Willson paid on the judgment $50, and on September 20, 1877, he paid the further sum of $610.83, in full satisfaction of the judgment; and "Duncan receipted therefor on the face of the judgment, on the order-book of the Ripley Circuit Court, as in full of the judgment, principal, interest and costs." See *Cravens* v. *Duncan, supra,* 55 Ind. 347.

5. Harden Duncan at no time made any claim of ownership to the land in question, nor did he assert any claim whatever against the same, after the payment of said judgment as in finding four set out. He resided on a farm within half a mile of the land in controversy, from 1874 to 1892, and knew that the Willsons were in

possession of the same, and claiming to be the owners thereof, and saw them frequently. On the 23d day of April, 1887, Duncan executed to the appellant a quit-claim deed for the land, for a consideration, as stated in the deed, of $150, but in fact without any consideration whatever. The appellant is not related to Duncan by blood or marriage.

6. It is found by the court that until May 25, 1887, the Willsons, appellees, had no actual knowledge that a sheriff's deed had been executed on said execution sale to Duncan, or that he made any claim to the land, except to recover the amount of the Mullan judgment.

7. On February 18, 1880, Sarah Kitts, the appellant, brought an action for partition of said land, claiming to be one of the owners as widow of David H. Kitts, and as mother of two of her deceased children. Appellees were made defendants to this action, and filed their cross-complaint claiming ownership of the land, and asking to have their title quieted. The suit was decided in favor of the appellees May 4, 1892, the court finding that the appellant was affected by the fraud of her husband, David H. Kitts, in making the deed of January, 13, 1864, to Cravens. That judgment was affirmed by this court. See *Kitts* v. *Willson, supra,* 130 Ind. 492.

8. The present action was begun April 25, 1887.

The conclusions of law on the foregoing findings were: "That the law is with the defendants, and that the plaintiff ought to take nothing by her action herein, and that the defendants should have judgment for costs."

The errors assigned and discussed by counsel make it necessary only that we should consider the correctness of the conclusions of law.

It is earnestly contended by appellees that the facts disclosed in the seventh finding show that the questions

in the case at bar were adjudicated in the case of *Kitts* v. *Willson, supra,* 130 Ind. 492.

With this contention we can not agree. In that case the issues were not the same as in this, nor was appellant a party in the same right as she is here. There appellant sued for partition as widow of David H. Kitts and heir of her own children; here she sues for possession as grantee of Harden Duncan. Her rights in this case, if any there be, had not accrued at the time of bringing the suit in partition, and would have been hostile to her rights in that case. In this case she steps into the shoes of Duncan, who was not a party to the former suit; whatever rights he would have, if appellant here, such rights, and no other, she has. The fact that she is the widow of David H. Kitts neither adds to nor takes from her right to recover in the case at bar.

There is no doubt that the decree in the partition suit was conclusive against appellant as to any interest she might claim in the land at the bringing of that suit; and by it the property was "freed from all claims (of hers) of whatsoever nature existing at the time of the institution of the suit." *Tanguey* v. *O'Connell,* 132 Ind. 62.

But before the rule of former adjudication can be invoked it must appear that the thing demanded was the same; that the demand was founded upon the same cause of action; that it was between the same parties, and found for one of them against the other in the same quality. The party must not only be the same person, but he must also be suing in the same right. *Jones* v. *Vert,* 121 Ind. 140; *Whitney* v. *Marshall,* 138 Ind. 472, and authorities cited in those cases.

We do not think that any of the cases cited by appellees are in conflict with the decision here reached as to former adjudication of the issues in this action.

The question remaining for decision is, whether

Harden Duncan, at the time he made his quitclaim deed to appellant, had himself a good title to the land.

His conveyance to her was without consideration, so that there is no question as to her being a good faith purchaser for value paid.

Duncan's title was based upon the judgment in favor of his father-in-law, John Mullan, for $339.50, assigned to Duncan by Mullan, as set out in finding three. Kitts' land, against which the judgment rested, was then worth $2,400.

Two courses were open to Mullan and Duncan for the collection of this judgment. One was to levy upon Kitts' land and sell it, applying the proceeds in payment of the judgment. The other was to bring suit to set aside the deed of Kitts to Cravens as fraudulent, and ask to have the land subjected to the lien of the judgment.

The former course was at first taken, and a sheriff's deed for the land was made to Duncan. A second execution was also issued on the judgment, and payments acknowledged on both executions.

But no deed was taken under the second execution and sale, and Duncan himself seems to have questioned the legality of the first sale, which was made for a grossly inadequate price, and without valuation or appraisement of the land.

Accordingly, as appears in finding four, Duncan brought suit against Cravens and Willson to set aside the deed of January 13, 1864, as fraudulent and void as against the Mullan judgment. There was a verdict in that suit for Duncan, including a finding of the amount due him as assignee of the Mullan judgment in the sum of $527.72. A decree was entered to the same effect. This decree was affirmed in this court on a remittitur being entered by Duncan for $137.87. The judgment so affirmed was paid in full by Willson, and was receipted

by Duncan "on the face of the judgment on the order-book of said Ripley Circuit Court, as in full of the judgment, principal, interest and costs."

The decree of the court as to the deed made to Cravens by Kitts, January 13, 1864, was that the conveyance so made was "fraudulent and void as to the judgment set forth in the complaint." If, therefore, the defendants to that decree had a right to pay the judgment, it would seem that the fraudulent character of that deed would be cured, as it was declared "void as to the judgment" only.

We think that the appellees might pay the judgment thus found against them, and thus free their title as against the decree in that case. The equities were all in their favor. They had paid to Cravens the full value of the land, or were under obligation to pay it. The court finds that they had no actual knowledge of the sheriff's deed at the time of their purchase. This alone would not, perhaps, have been sufficient, as, by the public records, they had constructive notice of the deed; but it tends to show good faith. They paid, in addition, the full balance, principal, interest and costs, due on the Mullan judgment, on account of which only the conveyance to Cravens, under which they claim, was found fraudulent. After the payment so made by them, Duncan never asserted any claim against the land, although he knew that appellees were in possession, and claiming to be the owners, for the period of eighteen years, or from 1874 to 1892. Duncan having received the money due him, does not then seem to have thought that he could be entitled to the land also.

In his work on Equity Jurisprudence, volume 1, section 371, Judge Story says: "A conveyance of this sort (it has been said with great truth and force) is void only as against creditors, and then only to the extent in

which it may be necessary to deal with the conveyed estate for their satisfaction. To this extent, and to this only it is treated as if it had not been made. To every other purpose it is good. Satisfy the creditors and the conveyance stands.''

As between the parties and as to all others but creditors, the deed is good. *Dunaway* v. *Robertson*, 95 Ill. 419; *O'Neil* v. *Chandler,* 42 Ind. 471.

In addition, we think it fairly appears in the case before us that Duncan abandoned title under his sheriff's deed and elected to consider that deed as invalid by reason of the invalidity of the execution and sale upon which it was based, and which were without appraisement and valuation, and that he availed himself exclusively of his right to have appellees' title found fraudulent as to his judgment. This election he might make, and having accepted payment in full of the amount found due him, that action discharged the land of all further liability to him, rendering his sheriff's deed a nullity and making valid the title of appellees. See *Goddard* v. *Renner*, 57 Ind. 532; *Taggart* v. *McKinsey*, 85 Ind. 392; *Jackson* v. *Neal*, 136 Ind. 173.

The judgment is affirmed.

Filed Dec. 18, 1894; petition for a rehearing overruled Mar. 22, 1895.