## REED v. ROBBINS.

[No. 8,577. Filed May 7, 1915.]

1. FRAUDULENT CONVEYANCES.—*Validity.*—*Recovery of Property by Grantor.*—A conveyance made in fraud of creditors is valid as between the parties, and equity will not interfere at the instance of a fraudulent grantor to aid him in the recovery of the property. p. 661.

2. DEEDS.—*Delivery.*—*Filing for Record.*—The filing of a deed with the recorder for record is a *prima facie* delivery of such deed, and, in the absence of an intention not to deliver, is conclusive. p. 662.

3. DEEDS.—*Delivery.*—*Intent.*—An intent on the part of a grantor to part with all control over a deed as its owner is essential to a delivery of the instrument. p. 662.

4. DEEDS.—*Delivery.*—*Evidence.*—*Intent.*—Evidence showing that a grantor on being threatened with litigation executed deeds to his brother-in-law from whom he received no consideration, that on execution of the deeds, grantor and the notary together left the deeds at the recorder's office for record, with instructions that the deeds were to be returned to grantor, that they were returned to him and by him deposited in a place of safety in his home; that he continued to occupy the premises, paid taxes thereon, and exercised all rights of ownership, and that the grantee never obtained possession of the deeds until they were given to him for the purpose of executing deeds of reconveyance, etc., was sufficient to sustain a judgment for the grantor on the theory that an intention on his part was wanting to complete delivery. p. 662.

From Sullivan Circuit Court; *Allison G. McNabb,* Special Judge.

Action by Noah O. Robbins against Ed. H. Reed. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Orion B. Harris,* for appellant.
*Charles D. Hunt* and *Gilbert W. Gambill,* for appellee.

HOTTEL, C. J.—Appellee filed in the Sullivan Circuit Court, a complaint in four paragraphs. The first two paragraphs are in the usual form to quiet title, the difference between them being, that one of them alleges a legal title, and the other alleges an equitable title, to the two tracts of real estate (hereinafter designated as lots), in controversy.

The third paragraph alleges that on May 4, 1908, appellee was the owner of the lot described therein, and that he and his wife, on that day, signed, acknowledged and caused to be recorded a deed purporting to convey such lot to appellant; that such deed was made without any consideration and without any intent to pass title, and was never delivered by appellee or accepted by appellant. It is asked that such deed be cancelled and held for naught and that a commissioner be appointed to convey such lot to appellee. The fourth paragraph is the same as the third, except it seeks to have cancelled a deed made to the other lot.

A demurrer to each paragraph was overruled. Appellant filed an answer in general denial and an affirmative answer in which he alleges, in substance, that appellee conveyed to him the lots in controversy by deed; that such deeds were delivered and accepted; that appellant took possession of the lots thereunder and that such deeds were made by appellee for the purpose of defrauding his creditors. Appellant also filed a cross-complaint to quiet title to such lots, which was answered by a general denial. On the issues so tendered there was a trial by the court and a general finding for appellee. Appellant filed a motion for new trial which was overruled, and the court rendered judgment for appellee, quieting his title to the lots.

Errors are assigned challenging each of the rulings on the demurrers to the several paragraphs of complaint and the ruling on the motion for new trial. In his brief, appellant presents no question as to the ruling on the demurrer to either paragraph of the complaint, or as to any of the grounds of his motion for new trial other than those which, respectively, charge that the decision of the trial court is not sustained by sufficient evidence and is contrary to law.

It is contended by appellant that the evidence will in no event sustain a judgment on the second paragraph of complaint because it counts on an equitable title; that if the deeds in question were not, in fact, delivered appellee is

the owner of the legal title, and not the equitable title, and that, if the deeds were delivered, they were made to defraud appellee's creditors and that, for this reason, equity will give the fraudulent grantor no relief; that it likewise follows that the evidence will not support a decision based on either the third or fourth paragraphs of complaint.

Appellee admits, in effect, that, at about the time of the making of the deeds in question, he was threatened with a lawsuit because of his alleged relations with another man's wife, and that it was on account of this threatened litigation that he made the deeds in controversy. It is well

1. settled that a conveyance made in fraud of creditors is valid as between the parties and that equity will not interfere at the instance of a fraudulent grantor to aid him in the recovery of his property. *Kitts* v. *Willson* (1892), 130 Ind. 492, 501, 29 N. E. 401; *Gable* v. *Columbus Cigar Co.* (1895), 140 Ind. 563, 38 N. E. 474; *Kitts* v. *Willson* (1895), 140 Ind. 604, 39 N. E. 313; *Finley* v. *Cooley* (1823), 1 Blackf. 262; *Edwards* v. *Haverstick* (1876), 53 Ind. 348; *Henry* v. *Stevens* (1886), 108 Ind. 281, 9 N. E. 356; *Sweet* v. *Tinslar* (1867), 52 Barb. (N. Y.) 271; *Bolt* v. *Rogers* (1832), 3 Paige (N. Y.) 154; 1 Pomeroy, Eq. Jurisp. §401; Bump, Fraudulent Conveyances (4th ed.) §§395, 397, 398. While appellee somewhat qualified his admission, above indicated, relating to his motive and purpose in making the deeds, it is doubtful whether his evidence relieved the transaction from the taint of fraud and, if the deeds were in fact delivered within the meaning of the law, we think that under his own evidence, there might be a serious question whether a court of equity would extend to the grantor any relief, but, for the reasons hereinafter indicated, we need not and do not decide this question. We prefer to rest our decision on the other branch of the case and now address our inquiry to the question, whether there was a delivery of the deeds.

It is contended by appellant and is, we think, in effect,

conceded by appellee, that the filing of a deed with the recorder for record is a *prima facie* delivery of such

2. deed, and, *in the absence of intention not to deliver, is conclusive.* *Vaughan* v. *Godman* (1884), 94 Ind. 191, 194; *Townsend* v. *Millican* (1913), 53 Ind. App. 11, 15, 101 N. E. 112; *Somers* v. *Pumphrey* (1865), 24 Ind. 231, 243; *McNeeley* v. *Rucker* (1843), 6 Blackf. 391. It is manifest from the exception involved in the proposi-

3. tion of law above stated, that the intention of the grantor is a controlling element in determining the question of delivery. Indeed, to make the delivery of a deed to real estate effective and complete in the particular case, there must be an intent on the part of the grantor to part with all control over such deed as its owner. *Indiana Trust Co.* v. *Byram* (1905), 36 Ind. App. 6, 12, 72 N. E. 670, 73 N. E. 1094; *Vaughan* v. *Goodman, supra; Hotchkiss* v. *Olmstead* (1871), 37 Ind. 74; *Dearmond* v. *Dearmond* (1858), 10 Ind. 191, 194; *Townsend* v. *Millican, supra,* and cases cited; *Berry* v. *Anderson* (1864), 22 Ind. 36, 39; *Freeland* v. *Charnley* (1881), 80 Ind. 132, 136.. Hence on this branch of the case, the question which we are called on to determine in its final analysis is, Was there any evidence in this case which can be said to warrant the inference, evidently drawn by the trial court, that appellee, by filing the deeds for record, did not intend thereby to part with ownership or control thereof or thereby to pass the title of the real estate in question? Our decision of such question must depend on that part of the evidence alone which is most favorable to appellee.

Appellant was a brother of appellee's wife, and, at the time of the making of the deeds in question, was unmarried and clerking in a store for appellee and living with

4. him in his home. The store was located on one of the lots in question. The facts testified to by appellee are, in substance, as follows: A short time after he was

threatened with the litigation before referred to, he, in company with appellant, went to the bank of his home town and he asked one of the officers of the bank about deeding the lots to him. Such officer indicated his unwillingness to be named as grantee. It was there suggested by a Mr. First, also connected with the bank, that the deeds be made to appellant, so that the lots would remain in the family. A few days later, on May 4, 1908, appellee and his wife, with appellant's knowledge, went to Sullivan, the county seat, and there had the deeds prepared and they signed and acknowledged them; and appellee and the notary—one or both—took them to the recorder's office and left them for record. Appellee directed the notary to get the deeds from the recorder's office and bring them to him, which the notary did ten or fifteen days later. When the deeds were delivered to appellee by the notary, he put them in his pocket and took them home and placed them in his dresser drawer in his room where they remained until May 18, 1909. During this period appellee paid the taxes on said lots, continued to occupy the business room in which his store was located and rented and received the rent for the building on the other lot and did some remodeling and repairing on one or both of such buildings. In the meantime, appellee's wife died. On May 18, 1909, or a short time prior thereto, appellee learned that appellant intended to get married and on that date told appellant that he had better make the deed to said lots back to him, appellee. In reply appellant said that he would attend to it that afternoon when he went to get his marriage license. Appellee then got the deeds out of the drawer where he had placed them the previous year and gave them to appellant so that he might prepare the deed of conveyance back to him, appellee. Appellant took the deeds with him that afternoon to Sullivan and when he returned he told appellee that he had fixed his papers for him. Appellant, instead of deeding the lots to appellee,

had, in fact, deeded them to his, appellant's unmarried sister. Appellant obtained a box at the bank and placed the deeds he had received from appellee and the one he made to his sister in this box. Six or eight weeks later appellee, after receiving information from the cashier of the bank that appellant had procured a box, asked appellant about it and was told by him that he had left his, appellee's key, to the box at the house. Appellee procured the key and opened the box and there found the three deeds, and for the first time, discovered that appellant had conveyed said lots to his sister. Appellee then went to the store where appellant was and told him that he had not done as he agreed to and called him a "rascal", to which he says, appellant made no reply. Appellant never paid any consideration for said lots and never claimed that he had until the trial. Appellant's sister had no knowledge of the deed made to her until she was told by appellee, here at her home in Indianapolis. There is no evidence of any recording of the deed to her. This evidence, in some of its material features, is disputed by other evidence, and especially by that of appellant, but we think it must appear from it that there was some evidence tending to show that appellee never, in fact, intended to deliver the deeds, which he made, to appellant, or to part with his title to the lots in question, and hence that a reversal of the judgment below on the evidence would require this court to determine its weight, rather than its sufficiency, and this we can not do.

The continued possession and control of the deeds by appellee after he had them recorded and the general conduct of both appellant and appellee with reference to them, as above indicated, was some evidence tending at least to overcome the presumption of delivery, arising from the act of having the deeds recorded. 4 Ency. Evidence 250; see also, cases cited *supra*. Judgment affirmed.

NOTE.—Reported in 108 N. E. 780. As to delivery of deeds, see 16 Am. Dec. 35; 58 Am. Rep. 289; 53 Am. St. 537. Delivery of deed by

deposit by grantor for registration, see 7 Ann. Cas. 226. For cases passing upon recording or delivery of deed for record by grantor, as a delivery to the grantee, see 54 L. R. A. 884; 9 L. R. A. (N. S.) 224; 38 L. R. A. (N. S.) 944. See, also, under (1) 20 Cyc. 608, 612; (2) 13 Cyc. 567, 734; (3) 13 Cyc. 561; (4) 13 Cyc. 746.