## BELLIN v. BLOOM ET UX.

[No. 27,413. Filed June 28, 1940. Rehearing denied September 18, 1940. Motion to modify mandate denied December 9, 1940.]

*Hodges, Ridgely & Davis* and *Joseph Nelson,* all of Gary, for appellant.

*Harry P. Sharavsky* and *Harry Long,* both of Gary; and *Thomas F. O'Mara,* of Terre Haute, for appellees.

FANSLER, J.—The appellant is the daughter of appellees. She began this action to quiet title to, and for possession of, certain real estate which had been conveyed to her by the appellees who held it as tenants by the entireties.

Isaac Bloom answered in general denial, and filed a cross-complaint in two paragraphs against the plaintiff and the defendant, Fannie Bloom, his wife. By the first paragraph of cross-complaint he sought to quiet title in himself and his wife, Fannie. In the second paragraph of cross-complaint it is alleged that he and his wife executed a deed to the real estate to their daughter; that he caused the deed to be recorded, but kept it in his own possession and kept possession of the real estate; that there was no consideration for the deed, and that he never intended to actually deliver the real estate to his daughter, and that she never accepted it; that his wife is conspiring with his daughter to deprive him of his interest in the property, and that his wife refuses to join him in his action. Fannie Bloom answered her husband's cross-complaint by general denial and by a second paragraph of answer in which she alleges that she and her husband by mutual agreement conveyed the property to their daughter in consideration of love and affection; that the gift was completed and executed; that she claims no interest in

the property, and prays that the prayer of her daughter's complaint be granted. The plaintiff answered the cross-complaint in general denial. There was a trial, special findings of fact and conclusions of law, and judgment quieting title in the appellees.

Error is assigned upon the conclusions of law and upon the overruling of the motion for a new trial.

Appellee Fannie Bloom has confessed error.

From the facts found and from the evidence, it is clear beyond any controversy that the appellees, apprehensive for the safety of the property as against the claims of creditors, intended to, and did, vest the legal title thereto in the appellant, relying for its recovery, if and when the claims of creditors might be out of the way, upon a parol agreement to reconvey. Under such a state of facts, the appellees are not entitled to recover for two reasons. It is settled beyond controversy that one who vests the legal title to his property in another, for the purpose of putting it out of the reach of, and defrauding, his creditors, cannot recover the property upon the theory that there was no consideration for the conveyance or that there was an agreement to reconvey. There is a modern exception to this rule in cases in which the grantee is the dominant party and induced the conveyance, with the fraudulent intent upon the part of such grantee, to defraud the grantor. See *Novak et al. v. Novak* (1940), 216 Ind. 673, 25 N. E. (2d) 993. Where one conveys property to another, to be held as the property of the grantor, and subject to his wishes as to reconveyance, it is held in trust by the grantee for the benefit of the grantor. A parol trust in real estate is not enforceable in this state, and an action to establish the trust and compel a reconveyance of the property will not lie. There is an exception to this rule in cases in which

the grantee is the dominant party and the conveyance was procured by fraud. In this case it is clear that the daughter was in no sense the dominant party.

The decision reached below is supported by, and was no doubt based upon, *Vaughan* v. *Godman et al.* (1884), 94 Ind. 191, and *Townsend et al.* v. *Millican* (1913), 53 Ind. App. 11, 101 N. E. 112, and *Reed* v. *Robbins* (1915), 58 Ind. App. 659, 108 N. E. 780, which derive from the Vaughan case. These cases are in conflict with the otherwise consistent views of this court as expressed in numerous opinions, and, as we see it, they are not supported by sound principle. They begin their reasoning with the often repeated dictum that the recording of a conveyance is only prima facie evidence of delivery. This is undoubtedly true, and the same may be said concerning the actual physical delivery of the deed to the grantee. That, too, is but prima facie evidence of delivery, and both recording and physical delivery of the deed are together but prima facie evidence of delivery. The intention of the grantor is the controlling thing, and if a deed is recorded, or delivered, or recorded and delivered, by mistake or under a misapprehension, or by the fraudulent procurement of the grantee, so that there is no intention upon the part of the grantor that it shall become effective, there is no delivery. But, upon the other hand, if a deed is prepared and signed and acknowledged and recorded by the grantor, with the intention to vest the legal title to the property in the grantee, and there is no mistake or fraudulent inducement by the grantee, there is a delivery of the legal title to the property, and if it is accepted by the grantee (and there is no necessity here for going into the question of when acceptance must be shown, and what constitutes acceptance) the legal title is vested. Here it is perfectly

clear that the appellees intended that legal title should vest in the appellant, and that the appellant should exercise the privileges of legal ownership of the property by executing and delivering a mortgage upon it to secure the appellant's note, and that the appellant did exercise such privileges of ownership. The very purpose of the whole transaction was to put the property beyond the reach of the grantors' creditors upon possible execution. It is inconceivable that the grantor may be permitted to contend that the title did not pass and was not intended to pass. True, there was a parol agreement to reconvey, which, as we shall see, is void. But this agreement to reconvey is conclusive evidence of an intention to pass the title. *Colee* v. *Colee* (1890), 122 Ind. 109, 110, 111, 112, 23 N. E. 687, 688, is squarely in point. Mrs. Colee signed, acknowledged, and recorded a deed to her children. There was no consideration. She sought to quiet title upon the ground that there had been no delivery of the deed. From judgment against her she appealed. Affirming, the court said in an opinion by Mitchell, C. J.:

"On the appellant's behalf it is contended that the special finding of facts does not support the conclusions of law, because it appears therein that the grantor, after signing, acknowledging, and causing the deed to be recorded, took it into her possession, intending to keep possession of it and the land during her lifetime. Hence, it is argued, that it appears from the facts specially found that the deed never was delivered to, or accepted by, the grantees. . . .

"The fact that the grantor took possession of the deed after it was recorded, intending to retain it in her possession during her lifetime, is not of itself sufficient to rebut the presumption of delivery which arose

from the making and placing of the deed upon record. . . .

"Any view that may be taken of the facts found leads to the conclusion that the law was correctly stated by the court."

In *McNeely et al.* v. *Rucker* (1843), 6 Blackf. 391, the facts were that Mrs. Rucker joined her husband in a deed for her own property to her husband's grandson, for the purpose of putting it out of the reach of her husband's creditors, whom she thought might reach it for his debts. The syllabus concisely states the court's conclusion that: "A conveyance having been signed, sealed, and acknowledged by a husband and wife in due form, was sent by the former in presence of the latter, to the recorder's office to be recorded. *Held,* in an action of disseisin by the grantee, that the conveyance had been legally delivered."

In *Somers et al.* v. *Pumphrey et al.* (1865), 24 Ind. 231, it appears that a wife, who was the owner of real estate, and her husband, wished to put the legal title in the husband. For that purpose they signed and acknowledged a deed to their hired man, which was not delivered to him. On the next day the hired man and his wife signed and acknowledged a deed for the land to the husband. The deeds were then taken by the husband and recorded. Afterward the wife sought to defeat the conveyance by asserting that the deed to the hired man had not been delivered. After setting out the facts, the court said (page 243 of 24 Ind.): "And according to the authorities, *supra,* the leaving of the deed at the recorder's office by *Golvin Somers,* one of the grantors, to be recorded, is, at least, a *prima facie* delivery to *Stineman,* such act being regarded by the law as an unconditional delivery to a third person,

for the use of the grantee." It was held that, notwithstanding there was no actual delivery of the deed to the grantee, the undisputed intention of the grantors being to vest title so that it could be deeded back, "taken in connection with the fact of placing the deed upon record, we think, should be conclusive that the deed was legally delivered." (Page 244 of 24 Ind.) Many cases to the same effect might be cited. The cases above referred to as erroneous cannot be reconciled with those just referred to.

In *Vaughan* v. *Godman et al., supra,* it appeared that a father, upon advice of an attorney, and for the purpose of avoiding litigation, and preserving his property against a possible creditor, executed and acknowledged a deed, procured it to be recorded, and then kept it in his own possession. The question arose upon a demurrer to the complaint, and it is said in the opinion that the complaint alleges that the conveyance was made to avoid the expense of litigation involved in a threatened suit upon an unfounded claim, but it cannot be seen that this latter fact would make any difference. If the claim was unjust, it must be assumed that, upon suit, a judgment would protect against it, and if there was judgment upon the claim it would be a legal debt. Regardless of the justice of the claim, the conveyance to the infant daughter was made with a view of avoiding payment of a possible judgment. Such a conveyance is fraudulent, regardless of the contention of the grantor that he believed the claim unjust. It therefore clearly appears, without controversy, in that case that the grantor intended to vest his infant daughter with the legal title to the property, which could only be done by delivering the conveyance, and his undisputed intention is controlling. The opinion in the Vaughan case was by three judges, Judge Byron K. Elliott dissenting.

In *Reed* v. *Robbins, supra,* the appellee had conveyed his property with intent to defraud his creditors. He signed and acknowledged the deed and had it recorded, but kept it in his own possession. It was held that, notwithstanding his admitted intention to vest the legal title so as to defeat his creditors, his having the deed recorded was only prima facie evidence of delivery, and that the title had not passed because there was no intention to deliver the deed. But the books are full of cases to the effect that title may be delivered without the physical delivery of a deed to the grantee, and that a deed may be delivered without delivering the title. It is not the delivery of the deed to the grantee that is important, or the grantor's intention concerning the delivery of the deed. Delivery of a deed is but evidence of an intention to deliver the title, just as recording the deed is evidence, not of an intention to deliver the deed, but of an intention to deliver the title. Recording itself may amount to delivery of the deed if it is accompanied by an intention to vest title.

In *Townsend et al.* v. *Millican, supra,* the facts were that the grantor, contemplating marriage, and being in bad health, and desiring that the real estate should be used as a home for his father and mother in case of his death, signed and acknowledged a deed to his sister and caused it to be recorded. It was decided that there was no delivery and that the title did not pass. *Somers et al.* v. *Pumphrey et al., supra; Colee* v. *Colee et al., supra; Vaughan* v. *Godman et al., supra,* and *Firemans Fund Insurance Co., etc.* v. *Dunn* (1899), 22 Ind. App. 332, 53 N. E. 251, are cited as authority for the court's conclusion. Of these cases only the Vaughan case supports the view taken in the opinion. The Somers case holds that legal title passes without the delivery of the deed, or without any intention of de-

livering it, where the intention to transfer the legal title by recording the deed is manifest.

In *Fireman's Fund Insurance Co., etc.* v. *Dunn, supra,* the Appellate Court merely held that a pleading which alleged the signing, acknowledging, and recording of a deed, but also alleged that it was not delivered, and that there was no intention of delivery, is good as against demurrer. It seems to have been the contention in that case that the instrument recorded, while a deed in form, was in fact a mortgage, and the question was whether the fee to the property had been conveyed. It is clear therefore that, of the cases cited, only the Vaughan case supports the Townsend case. It will be seen that in the Townsend case the grantor intended that if he should die, the property, not only the legal title, but the equitable ownership, should be in his sister for the benefit of his father and mother, and that his wife-to-be should not take it as his heir. In other words, he had a mental reservation. If he died, the deed was to pass title. If he lived, he wanted to be in a position to reclaim the property. But the title either passed or did not pass as of the time of recording the deed. He could not have two intentions as of that date.

It is clear in all of the cases referred to that the grantor intended the legal title to pass; to put the legal title away from him and vest it in another; to put the legal title out of the reach of creditors, or, in the Townsend case, to avoid its vesting in his wife at his death. To enforce the sound rule in any of these cases and in the case at bar seems to work a hardship, seems to permit the grantee to get something for nothing, to the injury of the grantor. But in each case, the grantor, knowingly, freely, and intentionally, conveyed the property for the purpose of protecting it against, and

putting it out of the way of, some one. In all cases, but the Townsend case, the intent was to defraud creditors. In that case it was. to prevent a prospective wife from having a benefit out of the property that he preferred should go to his father and mother. In each case, if the creditors had procured judgments and were seeking to execute upon the land, the grantor would have insisted that title had passed, and, in the Townsend case, if the grantor had found himself dying, he would have insisted that title passed.

The intention of the grantor that is important is the intention with respect to vesting the legal title in the grantee. This may be accomplished without physical delivery of the deed to the grantee, and physical delivery of the deed without intention to vest the title will not vest it. But it is clear beyond controversy that the intentional recording of a deed, with the intention of vesting the title in the grantee, is conclusive. When it is said that the recording of a deed is but prima facie evidence of delivery, it is meant that this evidence of delivery of the title can be rebutted upon proof of fraud or mistake or of other circumstances which indicate that the recording was not accompanied by an intention to convey the title. It is not rebutted by evidence of an intention to reserve an equitable title or an equitable right or by showing an agreement either in parol or in writing to reconvey. In either case the agreement to reconvey the legal title necessarily indicates an intention that it shall be first transferred and delivered to the one who is to reconvey. If this agreement is in writing it can be enforced, not by showing that there was no conveyance of the legal title, but by showing the agreement to reconvey. If the agreement to reconvey is in parol it cannot be enforced because a statute forbids.

In *Dunn et al.* v. *Dunn* (1882), 82 Ind. 42, 43, 44, it appears that a grantor conveyed his property to another under an oral agreement that it would be held in trust and deeded back. The grantor was not insolvent at that time. He afterward became insolvent, and his creditors sought to set aside the conveyance. It was held that, even though the conveyance was without consideration, it was valid as against the grantor and his heirs, and, since he was not insolvent at the time of the conveyance, it was not invalid as to his creditors; that: "The conveyance from David L. Dunn to the appellee must, as between them, be adjudged valid unless the verbal agreement created a trust which the latter could enforce. If a trust at all, it was an express one, and express trusts can not be created by parol. . . . No enforceable trust was created by the verbal agreement, and the judgment debtor, David L. Dunn, could neither have enforced the trust nor set aside the conveyance."

The statute which makes parol real estate trusts unenforceable is designed to prevent frauds and perjuries. All such statutes at times seem to work unconscionable hardships, but they have been thought a necessary protection. To break down the effect of the statute, in a case where it seems to work a hardship, is to establish a rule that will be of advantage to the fraudulent and the unscrupulous.

And so in the case at bar, even if the conveyance, made upon the agreement of the appellant to reconvey, had not been in fraud of creditors, it could not be set aside, nor could the agreement to reconvey be enforced by appellees under authority of the case last referred to. But in the case at bar it is undisputed that the original conveyance was made with the intention of defrauding creditors, which furnishes another reason why it cannot now be stricken down and

the property recovered. In putting the property beyond the reach of creditors, the appellees have put it beyond their own reach. The fraud intended upon their creditors has reacted upon them. In such a case the grantor is "hoist with his own petard."

The case of *Vaughan* v. *Godman et al., supra,* is overruled, and *Townsend et al.* v. *Millican, supra,* and *Reed* v. *Robbins, supra,* are disapproved. They are inconsistent with the views expressed by this court in *Colee* v. *Colee et al., supra,* and the other cases referred to, which are believed to be sustained by sound principle and to which we adhere.

Judgment reversed, with instructions to restate the conclusions of law and enter judgment for the appellant.

### DISSENTING OPINION.

TREMAIN, J.—As disclosed by the majority opinion, the court found the facts specially. The sufficiency of the evidence to support any finding is not questioned. The exceptions are taken to the conclusions of law.

The facts found are as follows:

"1.—That defendant, Isaac Bloom and Fannie Bloom on the 18th day of October, 1932, and for some years prior thereto were, and are now, husband and wife; that plaintiff, Irene Shirley Bloom Bellin, is the daughter of Isaac Bloom and Fannie Bloom, and was born in November, 1908.

"2.—That on the 18th day of October, 1932, and for a number of years prior thereto, said Isaac Bloom and Fannie Bloom were the owners as tenants by the entireties of the following described real estate, to-wit:

Lot Forty (40) in block sixty-four (64), as marked and laid down on the recorded

plat of Gary Land Company's First Subdivision in the city of Gary, Lake County, Indiana.

"3.—That in the year 1932 said real estate was encumbered by mortgage to 'the Home Savings and Loan Association of Gary, Indiana, securing a stock loan of $6,000.00 upon which on October 18th, 1932, there was unpaid the sum of $1,600.00.

"4.—That defendant was then personally indebted on accounts payable contracted in his coal business and otherwise in a large amount and together with his said wife upon mortgages covering other real estate, the value of which was greatly in excess of such mortgage indebtedness.

"5.—That at said time banks and building and loan associations were failing and defendant became alarmed and thought that if said Home Savings and Loan Association should fail, both he and his said wife would lose the stock payments theretofore made and said mortgage would remain totally unpaid. He also was apprehensive concerning action his own individual creditors might take and that the equity in said real estate so held by them might become involved.

"6.—That for the better protection of said equity of himself and wife, said defendant determined on or about October 18th, 1932, to refinance said $6,000.00 mortgage for the unpaid balance of $1,600.00 and to transfer the record title to said real estate to his said daughter, then Irene Shirley Bloom, until such time as conditions should become settled and improved and the claims of creditors satisfied.

"7.—That thereupon defendant and his said wife pursuant to said determination signed and acknowledged a deed to said real estate purporting to convey the

same to his said daughter who thereupon executed a new mortgage for $1,600.00 to said association representing the unpaid balance upon the prior mortgage after stock payments had been fully credited thereon, whereupon said $6,000.00 mortgage was released.

"8.—That at the time of the purported conveyance mentioned in Finding 7, it was understood and agreed between defendant and his said wife and his said daughter, that defendant would make payment of the said new $1,600.00 mortgage and that when requested by the defendant so to do said daughter would reconvey said real estate to her said father and mother, as tenants by the entirety, as the same had been heretofore held by them, and that pending said reconveyance, the defendant would retain possession of said real estate and exercise all the privileges of ownership thereof.

"9.—That said defendant has paid said $1,600.00 mortgage and has retained possession of said real estate hitherto, kept the same insured and repaired, paid the taxes, and has continuously exercised all the privileges and obligations of ownership thereof to this date.

"10.—That at the time of the purported conveyance to plaintiff aforesaid, it was not the intention of defendant or his said wife to transfer said real estate to plaintiff as her property or of plaintiff to receive it as such.

"11.—That there was no consideration whatever for said purported conveyance.

"12.—That pursuant to arrangements so to do, said purported deed was with the knowledge and consent of defendant recorded in the recorder's office of Lake County, Indiana, on October 25, 1932, in deed record 499, page 157, by said Home Savings and Loan Association of Gary, Indiana, and delivered by it to the defendant.

"13.—That defendant did not deliver same to plaintiff nor authorize anyone else so to do, but placed the same in a safety deposit box to which defendant and his wife each had access.

"14.—That several years thereafter defendant's said wife without the knowledge or consent of defendant and against his wishes took said deed out of said box and placed the same in another safety deposit box to which she alone had access, but which later became accessible to plaintiff by arrangements agreeable to defendant's said wife.

"15.—That plaintiff has never had the exclusive possession of said deed.

"16.—That in December, 1937, defendant having satisfied the claims of creditors and having learned of plaintiff's intended marriage demanded from plaintiff, then unmarried, a reconveyance of record of said real estate which plaintiff refused and has ever since refused to do.

"17.—That on May 19, 1938, but never before, plaintiff made demand on defendant for possession of said real estate.

"18.—That defendant and his said wife for over two years have been estranged and that plaintiff and defendant's said wife have considered to cheat this defendant out of any and all interest in and to said real estate by said refusal to reconvey as per said agreement so to do and to claim that said real estate was conveyed to plaintiff as a gift.

"19.—That the rental value of said real estate since May 19th, 1938, has been the sum of $150.00 per month.

"20.—That defendant's said wife, Fannie Bloom, refuses to join the defendant as party-cross-complainant in his cross complaint."

From these facts the court concluded that the deed was never delivered and was, therefore, insufficient to pass title, and that the grantor never intended to transfer ownership to the appellant.

It is not questioned that the recording of the deed is *prima facie* evidence of delivery. Whether or not the deed was delivered is the question to be determined from the facts found. The delivery of the deed is as essential to its validity as the signature of the grantor. Since its recordation is only *prima facie* evidence of its delivery, evidence of words, acts, or conduct showing that it was not the intention of the grantor to give effect to the instrument may be considered. The authorities everywhere stress the importance of the intention of the grantor. There are many decisions in this state emphasizing that fact and so holding. These decisions extend throughout the history of this court. A few of them are as follows: *Townsend* v. *Millican* (1913), 53 Ind. App. 11, 101 N. E. 112; *Reed* v. *Robbins* (1915), 58 Ind. App. 659, 108 N. E. 780; *Fitzgerald, Trustee* v. *Goff* (1884), 99 Ind. 28; *Emmons* v. *Harding* (1904), 162 Ind. 154, 164, 70 N. E. 142; *Stokes* v. *Anderson* (1889), 118 Ind. 533, 544, 545, 21 N. E. 331; *Vaughan* v. *Godman* (1884), 94 Ind. 191.

From these and many other decisions the rule has been firmly settled that the crucial test in all cases of this nature is the intent of the grantor to deliver the deed under all the facts and circumstances in the case. 16 Am. Jur. 501, 502, Deeds §§ 115, 116. The question of the delivery of a deed is ordinarily one of fact. Some of the authorities say it is a mixed question of law and fact. It is for the court or jury trying the case to determine whether or not there was a delivery of the deed. *Firemans Fund Ins. Co.* v. *Dunn* (1899), 22 Ind.

App. 332, 337, 53 N. E. 251; *Klingaman* v. *Burch* (1940), 216 Ind. 695, 25 N. E. (2d) 996.

No question as to the rights of creditors is involved in this appeal either by the pleadings or by the finding of the court. The facts found by the court speak for themselves. The court found that, at the time of the purported conveyance, it was not the intention of the defendant or his wife to transfer said real estate to their daughter as her property. There is no finding and no showing to the effect that the appellee conveyed the property to defeat any creditor. This is not a creditor's action to set aside a fraudulent deed. If it were, the creditor alone could maintain the action.

Findings Nos. 5 and 6 disclose that the appellee and his wife had theretofore executed a mortgage to a building and loan association to secure the payment of $6,000. They were apprehensive of their position if the building and loan association should fail. They believed that in such event they would lose their stock payments, having reduced the indebtedness to the sum of $1,600, and that the appellee could better protect himself and his wife by a transfer of the record title to the daughter and the execution of a mortgage by her to secure the $1,600, thereby securing a release of the $6,000 mortgage. The daughter agreed to all these matters, and knew that the property was not transferred to her as her own; that her father was to retain possession of it and pay the indebtedness, taxes, and insurance; and, when all of these things were done, she was to reconvey it to her father and mother. The court found that the deed was never delivered; that there was never any intention to deliver it; that it came into the possession of the daughter, if she ever received it, by a trick or fraud upon the part of the appellee's wife who had become estranged. In many

well reasoned decisions the courts have extended the equity rule so as to prevent fraud from being perpetrated. The appellant never paid any consideration for the property; never exercised any ownership over it; and agreed with her father and mother, according to the findings, that the property should be and remain theirs.

I do not think that the criticism of the decisions of this and the Appellate Court is justified under the facts in the case at bar. It is not necessary to overrule any decision in this state in order to affirm the judgment of the lower court, nor is it expedient or necessary to overrule well reasoned decisions in order to assist the appellant, the daughter, to hold and retain property which is not hers. This action does not fall within the statute discussed in the majority opinion. The title and ownership of the real estate never passed to the appellant, for want of a delivery of the deed. "Delivery of a deed" imports possession or right of possession of the instrument with intent to pass title. It is the final act which consummates the deed without which it is inoperative to pass title. *Fitzgerald, Trustee* v. *Goff, supra.* The recording of the deed does not pass title. It only secured the title from being defeated by a subsequent sale to an innocent purchaser. 16 Am. Jur. 500, Deeds § 112. The solution of this question is grounded entirely upon the intention of the grantor. On the subject of intent to deliver the deed, the special findings finally settle that question of fact in favor of appellee. If it were necessary or proper to go back of the findings to the evidence, it would be discovered that each finding is fully sustained. On appeal this court considers only the evidence favorable to appellee.

The majority opinion is in error in assuming that title passed to appellant. It could not pass to her under

the findings for the reason that the deed was never executed. The execution by the appellant of the mortgage to the building and loan is not evidence of ownership of title. The facts found deny rather than affirm that idea. The appellant was the medium through whom the form of indebtedness was changed. No one was injured thereby. However, by a reversal of this case the father is injured by being deprived of property which is his, and the daughter is benefited by property which in justice and good conscience she should not have.

I think the trial court reached the correct result, well sustained by many decisions of this and other courts. The judgment should have been affirmed.

NOTE.—Reported in 28 N. E. (2d) 53.