Elisabeth P. Mills, Appellee, v. William A. Susanka, Appellant.

Gen. No. 43,254.

Heard in the third division of this court for the first district at the October term, 1944. Opinion filed December 20, 1945. Released for publication January 8, 1946.

ODE L. RANKIN, of Chicago, for appellant.

BRADBURN & DAMMANN, of Chicago, for appellee.

MR. PRESIDING JUSTICE KILEY delivered the opinion of the court.

This is an action in equity filed May 24, 1939, in which plaintiff seeks a retransfer to her of 15 shares, the controlling segment, of the stock of the Pabst Pharmaceutical Company, referred to herein as Corporation. The decree, based on a master's report, impressed a trust on the 15 shares in plaintiff's favor and ordered their return to her. Susanka has appealed.

. Pabst was the inventor and patentee of certain medical formulas. From 1914 to 1931 he produced the medicines under the name of the Pabst Chemical Company, not incorporated. Susanka was his friend and had sold the Company essential oils for many years. In 1931 Pabst was indebted to his son Adolf Pabst, his daughters Mrs. Keith and Mrs. Mills, and to Susanka. He agreed with these debtors to form a corporation, transfer his assets to it and to liquidate the debts through the issuance of stock of the corporation. The Corporation was thereafter organized, with 48 percent of the stock issued to Susanka and 52 percent to Pabst and his children named hereinabove. Susanka was also given a Corporation note. Pabst dominated the corporate affairs, although he held but one share of stock, until his death in November, 1937.

In 1932 the Red Star Laboratory sued Pabst in the Federal District Court for damages for violation of copyright. The trial commenced in December of 1936. A verdict was expected on January 2, 1937. On that morning there was a meeting in the corporate offices, attended by the Pabsts and Hicks, who was a corporate employee and officer. Plaintiff was expected, but had been delayed in her trip from the West. These

conferees adjourned to meet Susanka at his Gas Station. Attorney Berglund attended this later meeting to represent the Pabsts. At the Gas Station an agreement was made under which 15 of plaintiff's 100 shares were transferred to Susanka. He gave his check for $375 and a note for a like amount, both payable to plaintiff. Subsequently, the check was cashed and the proceeds returned to him. The note was never paid. In the pleadings and at the trial plaintiff tendered the note and defendant tendered payment. Each refused the other's tender.

The Red Star suit resulted in a verdict and judgment against Pabst for $25,000. Malice was found to be the gist of the action and a capias issued for his arrest. A subsequent creditor's bill to enforce payment of the judgment was instituted against the Corporation stockholders. This suit was directed at setting aside the stock holdings. The federal court decided it adversely to Red Star. It found that the transaction between the stockholders and the Corporation was *bona fide*. After the legal proceedings were finally disposed of, demand was made upon Susanka for a return of the 15 shares of stock. He refused the demand, claiming ownership under the transfer which he claims was a *bona fide* sale.

The master found that Susanka and Pabst "were also good friends and associated together socially"; that the Corporation was capitalized at $25,000, 48 percent thereof representing $12,000 was issued to Susanka and $13,000 issued to the Pabsts; that the balance of Susanka's debt was represented by a Corporate note for $3,607.16; that Susanka understood that he was a minority stockholder and was agreeable; that Pabst and his associates anticipated the verdict against him in the copyright suit; that Hicks had been an employee of Pabst for many years prior to the Corporation, and thereafter became a Secretary, working intermittently from 1932 to 1935; that thereafter

the employment of Hicks was regular; that he was elected Director and Vice President in 1936 and served thereafter in that capacity; that Hicks told Pabst and his associates during the trial that the Red Star attorney informed him that should a judgment be entered against Pabst, a creditor's suit would be instituted against the Corporation stockholders to show that Pabst was the actual owner of the stock; that at the meeting on the morning of January 2nd, Hicks informed Pabst and his children that Susanka was worried lest in such a probable creditor's suit Red Star would gain control of the Corporation, putting Susanka at a disadvantage; that Hicks advised Pabst to allay Susanka's fears by inducing Pabst's children to transfer 15 shares to Susanka, so that even though the creditor's suit should succeed against the stock of the Pabst children, Susanka would have management and control; that Pabst, therefore, agreed upon Hicks' advice to meet Susanka and make the transfer; that at the Gas Station meeting Attorney Berglund advised Susanka there was no basis for his fear, since Pabst's children were *bona fide* owners and that, moreover, Red Star could follow the 15 shares to Susanka in the event of a creditor's suit; that Susanka persisted in his fears and asserted that the 15 shares would be safer in his hands; that the Pabst family and Susanka, therefore, agreed that plaintiff transfer 15 shares to Susanka to hold the same until there was no longer danger of acquisition by Red Star, then to be reassigned plaintiff; that Susanka desired the purported sale to appear legitimate; that, accordingly, the check and note were executed but the proceeds of the check were returned to him; and that the parties present agreed that plaintiff was to receive no benefit from either the check or the note.

On the basis of those findings the master further found that no consideration was paid plaintiff by Susanka for the purported assignment; that no consider-

ation was intended to be paid; that it was not intended Susanka should become the actual owner; and that plaintiff has continued to be and still is in equity the rightful owner.

The vital question is whether equity should lend its aid to plaintiff on the facts found by the master. The general rule is that where the grantor and grantee of property carry out the transaction in fraud of creditors, equity will leave the parties where it finds them. *Rosenbaum v. Heubner,* 277 Ill. 360; *Bellin v. Bloom* [217 Ind. 656], 28 N. E. (2d) 53; 24 Am. Juris. 267; 37 C. J. S. 1098. Where such a grantor sues to enforce a contract to reconvey, equity will not intervene where the parties are equally guilty. 24 Am. Jur. 270; 37 C. J. S. 1100; *Lang v. Lang,* 284 Ill. 148; *Ford v. Caspers,* 128 Fed. Rep. (2d) 884. Where the parties are not equally guilty, equity may give relief to the one who is comparatively innocent, not for the sake of that party, but on the ground of public policy. *Duncan v. Dazey,* 318 Ill. 500, 524; *Herrick v. Lynch, et al.,* 150 Ill. 283. Where, however, a conveyance for the purpose of defrauding creditors is induced by one in whom confidence has been reposed by the grantor, a court of equity will give relief notwithstanding fraud. *Lang v. Lang,* 284 Ill. 148; *Prickett v. Prickett, et al.,* 379 Ill. 181.

Plaintiff contends Susanka was a fiduciary. The only finding which has any bearing upon the relationship of Susanka to plaintiff is that Susanka and Pabst were friends and associated together socially. She was not present when the agreement was made by her relatives and the others present at the Gas Station to transfer 15 shares of her stock to Susanka. The master found that Susanka persisted in his fears of the creditor's suit and thus induced the transfer. He also found, however, that Berglund, the lawyer, advised that there was no basis for Susanka's fear and insisted that the corporate organization was valid and

that even if the affairs were justified, 15 shares would be traced to Susanka. Thus, it would seem that the Pabsts had Berglund's advice to offset Susanka's persistence in his fears. Moreover, the master had already found that pursuant to Hicks' entreaties to allay Susanka's fears, Pabst agreed to transfer the stock before going to meet Susanka.

Under these circumstances we see no basis for any contention that there was a fiduciary relationship of which Susanka took advantage to induce the conveyance. Certainly, there can be none that he induced plaintiff to make the transfer. This was necessary. *Lang v. Lang,* 284 Ill. 148. Plaintiff was not present. It is clear from the findings that if she were induced to make the transfer it was by her father on a later day. We shall not consider, therefore, contentions based upon the alleged fiduciary relation.

Plaintiff was not present when the agreement was made but later adopted the transaction and executed the documents and performed the actions to carry it out. There is no question that her object, regardless of the motive, was to place the stock, which was the balance of power, beyond the grasp of Red Star, probable suitors in an expected creditor's action. It seems quite clear, therefore, that under the findings of the master, plaintiff and Susanka were equally guilty.

A further element in the case before us is the conduct of plaintiff in the creditor's suit. Susanka there, in his answer, stated that he had purchased the 15 shares and was the *bona fide* owner of 256 shares. Plaintiff filed an answer in which she stated only that she was the owner of "certain shares." She is presumed to have known the contents of Susanka's answer. She objected in no way to the claim of Susanka that he was the *bona fide* owner of the 15 shares. She permitted the Court to determine the case without disclosing her claim. She made no claim until that case had been disposed of and time for appeal had passed.

Plaintiff relying on *Rossow v. Peters,* 277 Ill. 436, says that since no creditors or third persons were injured in the transaction with Susanka, she should be permitted to enforce Susanka's alleged agreement to retransfer. In that case Rossow conveyed his homestead to defraud creditors. The court decided his creditors could have no interest in the homestead, which was exempt property, could not be defrauded of it and the intention to defraud was, therefore, impossible of fulfillment. It decided that Rossow could compel reconveyance of the homestead. It referred to the conflict of decisions on the question whether property fraudulently conveyed could be recovered where none was harmed. It then said that the general rule to which we have hereinbefore referred to, does not obtain where neither creditors nor third persons are injured or defrauded. It is this last statement in the *Rossow case* upon which plaintiff relies.

The case of *Rosenbaum v. Huebner* is reported in the same volume as the *Rossow case,* at page 360. There Rosenbaum conveyed property to Huebner, while a suit was pending against him, to place it beyond a possible judgment. Later, in furtherance of the scheme, Huebner conveyed to Rosenbaum's relatives. Rosenbaum, in the suit, sought to recover the property in a cross-bill. The court held that, because of the fraud which prompted Rosenbaum to make, or have made, the two conveyances, equity would leave the parties where it found them.

An important distinction between these two cases is that in the *Rossow case* the conveyance was of property exempt from claims of creditors; in the *Rosenbaum case* the property was, as in the instant case, not exempt property. In the *Rosenbaum case* furthermore, as well as in the instant case, no third parties were harmed. It is true that in the *Rosenbaum case* it is not disclosed how the pending litigation terminated, so that it cannot be said that later there may not

have been a judgment creditor. In the instant case the litigation had terminated.

When the transaction with Susanka was carried out, the creditor's suit was not pending, as was the suit in the *Rosenbaum case*. The transaction, however, was carried out under the threat and fear of the creditor's suit. The influence on the transferor was present in both instances. Where anticipated danger of litigation has influenced the conveyance, equity will not interpose to restore to the transferor the title to property. *Rosenbaum v. Huebner*. Under all the circumstances in this case we believe that that rule is decisive of this case against plaintiff. We believe the *Rosenbaum case* and not the *Rossow case* is the precedent we should follow.

For the reasons given we believe that the plaintiff should not be permitted to recover back the stock she transferred. It may be said that this decision will benefit Susanka who does not deserve the benefit. If true, the courts have held that such an evil is less than the evil which would follow giving relief under circumstances such as are presented in this case. We need consider no other points.

The decree of the Circuit Court is reversed and the cause remanded with directions to dismiss the complaint for want of equity.

*Decree reversed and cause remanded with directions.*

BURKE and LEWE, JJ., concur.